397 A.2d 1225

**In the Interest of Lisa WHITTLE, a minor.**

**Appeal of Iva WHITTLE.**

Superior Court of Pennsylvania.

Argued Oct. 26, 1978.

Decided Feb. 15, 1979.

Daniel P. McDyer, Pittsburgh, for appellant.

Sarah C. McIntyre, Pittsburgh, for appellee, Lisa Whittle.

Charles T. Pankow, Assistant County Solicitor, Pittsburgh, for appellee, Child Welfare.

Before CERCONE, WIEAND and HOFFMAN, JJ.

HOFFMAN, Judge:

On November 30, 1977, Lisa Whittle, two years old, was declared dependent and placed in the custody of the Allegheny County Child Welfare Services (CWS). This appeal is brought by Lisa's mother, Iva Whittle, who seeks to regain custody. We will affirm in part, reverse in part, and remand with directions for the entry of an appropriate order.

Mrs. Whittle is a widow who currently is raising her three other children—William, six, Charles, three, and Sherry, one—in her home. On May 11, 1977, Mrs. Whittle placed Lisa and Charles in the bathtub while she cleaned the kitchen. Upon hearing Lisa scream, she returned to the bathroom to find that Charles had turned on the scalding hot water from the tub's faucet. He had climbed out but Lisa was still in the tub. Mrs. Whittle pulled her out, and took her to Allegheny County General Hospital. Lisa was immediately transferred to the burn unit of West Penn Hospital, where she remained in critical condition with first, second, and third degree burns of her feet, legs, and hands, until June 27, 1977. The next day she was transferred to the pediatric unit, and the court below, after a hearing, entered a shelter order pursuant to 11 P.S. § 50–309 giving temporary custody of Lisa to CWS. Five months later, CWS filed a dependency petition, and on November 30, 1977, the court below held a hearing at which the following evidence was produced.

Martin Hako, a caseworker for CWS, stated that CWS wanted Lisa declared dependent because Mrs. Whittle would be unable to give Lisa the care necessary for Lisa's recovery. His basis for this conclusion was that the care she needed was both time-consuming and required special training. Mrs. Whittle was not so trained, and had to care for three other children. One of these children, Sherry, had developed a skin rash on her legs, and Mrs. Whittle had to devote considerable time to Sherry in this regard. Mr. Hako also felt that Sherry was not receiving proper care but admitted

that Sherry's rash had just recently cleared up. He admitted that CWS had not attempted to teach Mrs. Whittle the special care which Lisa would require nor offered any other support services to her. He also stated that the Whittle home was clean and well-kept and that the children were clean, well-fed, and generally well cared for in their home.

Susan Boule, a registered home care nurse from West Penn Hospital, testified that Lisa needs to have a cream applied to her feet twice daily. She must continually wear special Jobst stockings, which must be changed daily. She also has certain dietary restrictions and requires daily physical therapy. If this care, especially the cream and Jobst stockings, is not diligently administered, Lisa will suffer contractures of her feet. Her toes would curl up, requiring surgery, and scar tissue would develop causing a permanent crippling effect. However, Nurse Boule stated that this special care is not difficult to teach and could be learned by an ordinary person—prior medical training would not be necessary. In fact, CWS called Nurse Boule into Lisa's foster home to teach her foster mother how to administer this care. Nurse Boule confirmed that CWS never asked her to teach this care to Mrs. Whittle.

Bernice Wilson is the foster mother into whose home CWS placed Lisa. Mrs. Wilson estimated that changing the stockings and applying the cream takes about 2½ hours each day. The physical therapy is not time-consuming, but the preparation of Lisa's diet is.

Iva Whittle testified that she felt capable of taking care of Lisa if given the opportunity and the proper training. She is in good health and, being unemployed, stays at home with her children all day. She also testified that she took care of Sherry's skin rash in her home, with help from local hospitals, by the application of prescribed creams, stockings, physical therapy, and a restricted diet. She initially had some difficulty because the cream first prescribed for Sherry was too strong and Sherry would kick off her stockings in bed at night. However, these problems were solved, and Sherry was cured.

The purpose of the Juvenile Act is to preserve, whenever possible, the unity of the family; children should be separated from their families only in cases of clear necessity. 11 P.S. § 50–101(b)(1) and (3); *In Interest of La Rue,* 244 Pa.Super. 218, 222–27, 366 A.2d 1271, 1273–1275 (1976). Even where there are inadequacies in the child's home, the court should first consider ordering CWS to take the steps necessary to instruct the parents in the skills needed, and provide follow-up supervision in the home, where feasible. *Matter of DeSavage,* 241 Pa.Super. 174, 187, 360 A.2d 237, 243 (1976).

Here, all the evidence in the record indicates that Mrs. Whittle has provided a good home for her children. There has been no allegation by CWS that the three children remaining in her home are dependent or neglected. Thus, the only rational basis for finding Lisa dependent is that she is in need of special therapy to overcome the debilitating effects of her burns, which Mrs. Whittle is presently not able to provide. As such, the finding of dependency is technically correct and will be affirmed.

However, we must reverse that part of the order giving custody of Lisa to CWS. Home care nurse Boule stated that an ordinary person could be taught the necessary procedures, and Mrs. Whittle has expressed a willingness to learn. Indeed, CWS employed Nurse Boule to teach the care to the foster mother, and apparently (although this is not clear from the record) Nurse Boule is also making follow-up visits to the foster home. There is nothing in the record suggesting that CWS cannot provide this service to Mrs. Whittle in the child's home. Although Lisa's care is time-consuming, Mrs. Whittle is home all day to care for her children. The fear of CWS that Mrs. Whittle would be overcome by having to nurse to two small children is not longer justified since Sherry's skin rash has been cured.

Additionally, Mrs. Whittle has already demonstrated her ability to learn and administer the kind of care that Lisa would need. Sherry's skin rash was not so serious a condition as Lisa's burns, but it required similar kinds of treatment (stockings, cream applications, physical therapy, die-

tary restrictions) and Mrs. Whittle was successful, with help from local hospitals, in curing Sherry's rash. Thus, the record does not show any clear necessity to remove Lisa from her home. However, because of the serious adverse consequences to Lisa which can result if Mrs. Whittle does not diligently administer the proper care, CWS should also provide her with follow-up supervision and support services, as necessary to insure Lisa's recovery.

Instead of ordering a general remand which would further delay the return of Lisa to her mother, we find that the record is sufficient in this case to reverse the custody order and direct the entry of a new order. *In re Custody of Hernandez*, 249 Pa.Super. 274, 300–303, 376 A.2d 648, 662–63 (1977). Therefore, the order of the court below of November 30, 1977, is affirmed in part and reversed in part. The adjudication of dependency is affirmed. The award of custody to CWS is reversed, and custody is granted to Mrs. Whittle. The case is remanded with directions to the lower court to fashion an appropriate order requiring CWS to provide Mrs. Whittle with in-home training so that she may care for Lisa, and with whatever follow-up supervision and support services as long as they are necessary to insure Lisa's recovery.

Order affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.