437 A.2d 1229

**In the Interest of H. B., a minor.**

**Appeal of M. L. B.**

Superior Court of Pennsylvania.

Submitted May 20, 1981.

Filed Aug. 7, 1981.

Reargument Denied Jan. 4, 1982.

Thomas E. Kuhn, Erie, for appellant.

Joseph T. Kownacki, Erie, for H. B., appellee.

William A. Dopierala, Erie, for Children's Services, participating party.

Before MONTGOMERY, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in adjudicating her daughter dependent and ordering that the child be placed in foster care under the supervision of Children's Services of Erie County (CSEC). For the reasons which follow, we vacate the order of the lower court and remand for proceedings consistent with this opinion.

On November 15, 1979, appellant's daughter, H. B., then six months old, was taken into custody and placed in temporary foster care pursuant to an order of the lower court. On that same day CSEC filed a petition pursuant to the Juvenile Act [1] requesting that the child be declared dependent. Following a detention hearing before a master,[2] the lower

---

1. Act of July 9, 1976, P.L. 586, No. 142, § 2, as amended; 42 Pa.C.S.A. § 6301 et seq.

2. The Juvenile Act requires that such a hearing be held "not later than 72 hours after the child is placed in detention or shelter care to

court ordered that the child be kept in foster care pending proceedings on the dependency petition. Thereafter, on November 28 and December 3, 1979, the master heard testimony from various witnesses on the issue of dependency. At the close of these proceedings the master issued a report in which he concluded that the evidence did not warrant an adjudication of dependency and recommended that the petition be dismissed. CSEC filed exceptions to the master's report, and the lower court heard argument thereon. Without taking any further testimony, the court issued an order on January 23, 1980, in which it rejected the master's recommendation and adjudicated the child dependent. Subsequently, on February 22, 1980, the court ordered, *inter alia*, that the child continue indefinitely in foster care under the supervision of CSEC.[3] This appeal followed.[4]

The facts underlying the decision of the lower court are substantially undisputed. At the time of the proceedings below appellant was twenty years old, unmarried, unem-

determine whether his detention or shelter care is required" before the full hearing on the petition for dependency. 42 Pa.C.S.A. § 6332(a).

3. The court ordered additionally that appellant participate in a parenting skills program and undergo individual counseling, that "casework counseling be provided in conjunction with both of these programs," that appellant be provided with "a concrete treatment plan regarding what [she] needs to do prior to the child's return," and that appellant have weekly visitation privileges.

4. This case was submitted to us on May 20, 1981, fourteen months after appellant filed her notice of appeal. The delay resulted from the failure of the lower court to file its opinion until December 1, 1980, which the court attributed to appellant's tardiness in filing a statement of the matters complained of on appeal, pursuant to Pa.R.A.P. 1925. Whatever the reason for it, such inordinate delay seriously affects the vital interests of all concerned in matters involving the welfare of children. Parent and child alike are kept in limbo waiting for a final disposition, and if the decision of the lower court is ultimately reversed on appeal, an unjustified separation of the family may have been needlessly prolonged. Moreover, our ability to review such matters meaningfully is greatly hampered when we are provided with a stale record which may well no longer accurately reflect the circumstances of the parties. Accordingly, members of the bar and bench alike are urged to take all possible steps to ensure the speedy disposition of such cases.

ployed, and on welfare.[5]  In late August or early September, 1979, appellant contacted CSEC and requested assistance in finding a new residence and developing parenting skills.[6] Although appellant had been living in her mother's home, the mother had asked her to leave, and appellant lacked the means to procure new housing and provide properly for her infant daughter.  A CSEC caseworker contacted appellant on September 18, and the next day appellant voluntarily placed her daughter in a foster home for thirty days so that she could try to secure a new residence.  Appellant thereafter stayed with friends at various addresses until she obtained an apartment of her own sometime in late October or early November.  The child remained in the foster home until October 17, after which appellant once again assumed custody.[7]

After being returned to appellant, the child was taken to hospitals on three separate occasions.  On October 21, the child was taken to Erie Osteopathic Hospital for treatment of what appellant then described as a red lump on the back of the child's neck.  Examination revealed only heat rash on the neck plus a severe case of diaper rash.  The examining doctor recommended an ointment for the latter condition, and the child was released.  The other two hospital visits

**5.**  The child's father lives apart from appellant, has apparently never cared for nor had custody of the child, and has not taken part in these proceedings.

**6.**  Even before appellant first contacted CSEC, the agency had received several confidential referrals concerning appellant's daughter, at least one of which alleged that the child was suffering from "lack of supervision, abuse . . ., neglect, and a severe diaper rash."  N.T. November 28, 1979 at 44.  It appears further that appellant left her daughter in the care of a babysitter for the entire month of August, 1979.  The record does not reveal the identity of this individual, the circumstances or total duration of the placement, or the frequency of appellant's visits (if any) while the child was in the custody of the babysitter.

**7.**  Appellant removed her child from the foster home for the period from October 5 to October 13, explaining at the hearing that "I wanted her with me."  N.T. December 3, 1979, Vol. II at 13.  It is not clear where appellant and her daughter resided during that eight-day period.

both occurred on November 14. Early in the afternoon and again late in the evening, appellant summoned local ambulances to take her child to two area hospitals when it appeared to her that the child had stopped breathing. On both occasions the child was breathing regularly when ambulance attendants arrived, and upon examination she was found to be suffering from nothing more than a slight upper respiratory infection and was released from the hospitals. On the first occasion, Nurse Virginia Kisko of Erie Osteopathic Hospital noticed that the child was dirty and smelled badly of both vomit and urine. Nurse Kisko observed also that the child had a large sore on her left hand, which was later identified as a cigarette burn. Nurse Jane Ann Meador saw the burn that evening when the child was taken to St. Vincent's Hospital and also noticed that the child was wearing soiled clothing and smelled of vomit. Both nurses also testified that appellant did not appear to be greatly concerned about her daughter's condition and that she did not initiate any efforts to hold or comfort the child while at their respective hospitals.[8]

On the basis of what they had observed on the evening of November 14, personnel at St. Vincent's Hospital filed a report of suspected abuse, and on November 15, CSEC obtained a court order to take custody of the child. Appellant's caseworker found appellant and the child later that day in a restaurant near appellant's apartment. Immediately upon entering the restaurant the caseworker noticed that the child quite obviously needed a diaper change. The caseworker further discovered that the milk in a bottle which appellant had given the child was sour. The caseworker then took custody of the child and placed her in foster care, after which these proceedings were commenced.

The testimony before the master revealed additionally that the child had not received certain unspecified immunizations. Appellant explained that she had made several

---

**8.** Additionally, the foster mother testified that during a visit with the child in the foster home in late September, appellant had seemed not to know how to take care of and relate to her daughter, and the child did not appear to recognize appellant.

appointments to have her daughter immunized, but that on each occasion she was either unable to obtain transportation to the doctor's office or the child was ill. Appellant testified also that the cigarette burn on the child's hand had apparently occurred accidentally while appellant's sister was babysitting. Regarding the events in the restaurant when the caseworker detained the child, appellant explained that she had been unable to smell her daughter's sour milk and soiled diaper because her nose was congested from a head cold. Appellant also presented the testimony of several friends who stated that she was a loving mother who had always cared well for her daughter.

Our Court has summarized the standards governing our review of dependency cases as follows:

The Juvenile Act defines a "dependent child," in pertinent part, as a child who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals . . . ." 42 Pa.C.S.A. § 6302. "Before interfering with a parent's care or control of a child and ordering the intervention of an agency of the state, a court must first determine that the child is dependent." *In the Interest of Theresa E.*, 287 Pa.Super. 162, 172, 429 A.2d 1150, 1155 (1981). *See* 42 Pa.C.S.A. § 6341(a). "[T]he fact of dependency must be proved by evidence that is 'clear and convincing.' " *In the Interest of Theresa E., supra,* 287 Pa.Super. at 172, 429 A.2d at 1155. *See* 42 Pa.C.S.A. § 6341(c). "[I]n determining whether a child is dependent, the hearing judge should not ask what are the child's 'best interests' but whether the child is presently without proper parental care and, if so, whether such care is immediately available." *In the Interest of Pernishek,* 268 Pa.Super. 447, 458, 408 A.2d 872, 877–78 (1979) (citing *In the Interest of LaRue,* 244 Pa.Super. 218, 366 A.2d 1271 (1976)). *Accord, In the Interest of Theresa E., supra; In the Interest of Black,* 273 Pa.Super. 536, 417 A.2d 1178 (1980). A child who has been adjudicated dependent may not be separated from his parents unless such separation is clearly necessary. 42

Pa.C.S.A. § 6301(b)(3); *In the Interest of Theresa E., supra; In re Donna W.,* 284 Pa.Super. 338, 425 A.2d 1132 (1981) (collecting cases). "To ensure a proper resolution of these issues, separate counsel should represent the child at the dependency hearing, and the hearing judge should conduct a comprehensive inquiry by receiving evidence from both interested and disinterested witnesses and should support his decision in an opinion in which he discusses and analyzes the evidence fully." *In the Interest of Pernishek, supra* [268 Pa.Super.] at 457, 408 A.2d at 877. *Accord, In the Interest of Theresa E., supra; In the Interest of S. M. S.,* 284 Pa.Super. 9, 424 A.2d 1365 (1981).

*In re A. E. M.,* 288 Pa.Super. 284, 288, 431 A.2d 1049, 1051–52 (1981).

▇▇▇▇ Viewing the case under the aforementioned standards, we conclude that the lower court's adjudication of dependency cannot stand. It may be that before the hearings appellant's daughter was without proper parental care or control as set forth in the Juvenile Act. Appellant concededly had sought agency assistance in parenting and finding a new residence, and for a time her life after her departure from her mother's home was somewhat unsettled. Although the evidence hardly establishes a pattern of abuse, it does strongly suggest that appellant had neglected her daughter's physical and emotional well-being to some extent. The present record, however, does not clearly and convincingly establish that proper parental care or control was not immediately available. *In re A. E. M., supra; In the Interest of Black,* 273 Pa.Super. 536, 417 A.2d 1178 (1980); *In the Interest of Pernishek,* 268 Pa.Super. 447, 408 A.2d 872 (1979). The isolated incidents of neglect set forth in the record do not necessarily warrant the conclusion that the child was likely to continue suffering such treatment. *Cf. In the Interest of Black, supra* (evidence that parents' two previous children had died because of improper care and precautions taken by parents warranted finding of dependency of newborn infant). There was precious little evidence directly

addressing appellant's abilities and shortcomings as a parent. The record contains the subjective impressions of nurses who saw appellant with her daughter briefly during hospital visits, as well as those of the foster mother and the caseworker. Absent, however, is any professional evaluation of appellant's parenting abilities and the child's prospects with appellant. *Cf. In the Interest of S. M. S.*, 284 Pa.Super. 9, 424 A.2d 1365 (1981) (virtually unanimous conclusions of social workers, psychiatrists, and psychologists constituted clear and convincing evidence of risk of substandard care if child were returned to parents). Moreover, appellant had apparently found a permanent residence as of the time of the master's hearings, thereby taking a major step toward reversing the "pattern of instability" which motivated the lower court's decision at least in part. Lower Court Opinion at 6–7. While we do not mean to minimize the risks facing a child whose parent is unwilling or unable to care properly for her, we simply cannot conclude on the present record that such is the case here. Accordingly, we vacate the order of the lower court and remand for further proceedings at which the parties may present evidence regarding appellant's present capacity to provide the necessary care and control for her daughter. We stress that after conducting the comprehensive inquiry which our cases mandate, should the lower court conclude that appellant is unable to provide proper care and control for her daughter, the court should consider all feasible alternatives in rendering its dispositional order. As noted above,

> [t]he law is clear that a child should be removed from her parent's custody and placed in the custody of a state agency only upon a showing that removal is clearly necessary for the child's well-being. In addition, this court [has] held that clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with her family are unfeasible.

*In the Interest of K. B.*, 276 Pa.Super. 380, 384, 419 A.2d 508, 515 (1980) (Opinion of SPAETH, J.) (citations omitted). *See*

also *In the Interest of Pernishek, supra; In the Interest of Whittle,* 263 Pa.Super. 312, 397 A.2d 1225 (1979). Finally, in the interest of securing the speediest possible resolution of this matter, we direct the lower court to "proceed with utmost dispatch," *In the Interest of LaRue,* 244 Pa.Super. 218, 235, 366 A.2d 1271, 1279–1280 (1976) (plurality opinion), render its final order as soon as the development and consideration of a complete record will allow. Any party aggrieved by the court's ultimate decision may file a new appeal with this Court, as provided by law.

Order vacated and case remanded for proceedings consistent with this opinion.