440 A.2d 535

**In the Interest of RYAN MICHAEL C., a minor.**

**Appeal of MICHAEL S. and Marjorie C. S.**

Superior Court of Pennsylvania.

Submitted June 24, 1981.

Filed Jan. 19, 1982.

418

James T. Rague, Wellsboro, for appellant.

William A. Hebe, Wellsboro, for Children's Services, participating party.

Earl W. Tabor, Wellsboro, for Guardian, participating party.

Before HESTER, CAVANAUGH and DiSALLE *, JJ.

CAVANAUGH, Judge:

This appeal is taken from an order of the lower court granting custody of Ryan Michael C., the infant son of appellants Michael S. and Marjorie C. S., to Children's Services of Tioga County. Because the order was not based on a finding of dependency as required by the Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq.*, we vacate the order and remand the case.

 On October 10, 1980, Children's Services of Tioga County filed a petition pursuant to the Juvenile Act alleging that Ryan Michael, born May 2, 1980, was a dependent child. A brief hearing on the petition was held on October 13, 1980. At the conclusion of that hearing, the judge entered the following order.

> And now, October 13, 1980, custody of the above minor is awarded to Children's Services of Tioga County until further Order of Court.

No adjudication of dependency was made. We have repeatedly held that no court may interfere with a parent's custody of his or her child absent a finding of dependency and full compliance with the Juvenile Act procedures. *In Re A. E. M.*, 288 Pa.Super. 284, 431 A.2d 1049 (1981); *Hemenway v. Hemenway*, 284 Pa.Super. 481, 426 A.2d 149 (1981); *In re Frank*, 283 Pa.Super. 229, 423 A.2d 1229 (1980);

---

* Decision was rendered prior to DI SALLE, J., leaving the bench of the Superior Court of Pennsylvania.

*In re Jackson,* 267 Pa.Super. 428, 406 A.2d 1116 (1979); *In The Interest of LaRue,* 244 Pa.Super. 218, 366 A.2d 1271 (1976). The order entered by the lower court in this case was, therefore, clearly improper.[1]

A hearing on a petition alleging dependency proceeds in two stages. First, the court must determine by "clear and convincing evidence" that the child is dependent.[2] A dependent child is defined, in relevant part, as one who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals."[3] In determining whether a child is dependent, the court must ascertain not only what sort of parental care the child received in the past, but also what sort of parental care the child will receive if custody is given to the parents. *In The Interest of K. B.,* 276 Pa.Super. 380, 419 A.2d 508 (1980); *In The Interest of Clouse,* 244 Pa.Super. 396, 368 A.2d 780 (1976). Only if the court concludes by clear and convincing evidence that proper parental care is not immediately available may it adjudicate the child dependent. If such a finding

1. Appellee contends that this appeal should be quashed as premature. The order cannot be considered final, appellee argues, since there was no finding of dependency and since the order states that the custody award is effective "until further order of the court." The Juvenile Act, however, does not permit a court to temporarily remove a child from the custody of his parents following a hearing on a dependency petition unless a finding of dependency is made. A disposition placing a child in the custody of a state agency pursuant to 42 Pa.C.S.A. § 6351 *must* be preceded by a finding of dependency. The only other section of the Juvenile Act which allows a child to be placed in the custody of a state agency is § 6325 which only applies *before* the hearing on a dependency petition. The hearing held by the lower court in this case was clearly a hearing on the petition and thus required an adjudication of dependency before a disposition could be made. Such an adjudication was not made and the order entered by the court was therefore improper. To hold, as appellee suggests, that it was not final and is not appealable until the lower court makes it final would frustrate the purposes of the Juvenile Act and prevent review of the lower court's disposition indefinitely.

2. 42 Pa.C.S.A. § 6341(c).

3. 42 Pa.C.S.A. § 6302.

is not made, custody must be given to the parents immediately.

 If the court concludes that a child is dependent, it proceeds to the second stage of the hearing, the dispositional phase. Even a child who has been adjudicated dependent may not be separated from its parents unless the evidence presented establishes that such a separation is "clearly necessary." Furthermore, "clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with [his or her] family are unfeasible." *In The Interest of K. B., supra*, 276 Pa.Super. at 393, 419 A.2d at 515. One of the primary purposes of the Juvenile Act is to preserve the unity of the family whenever possible.[4] Thus, we have stated that:

> Even when there are inadequacies in the child's home, the court should first consider ordering [the state agency] to take the steps necessary to instruct the parents in the skills needed, and provide follow-up supervision in the home, where feasible.

*In The Interest of Whittle*, 263 Pa.Super. 312, 316, 397 A.2d 1225, 1226 (1979). Therefore, an order placing a child in the custody of a state agency cannot properly be entered until the court has considered and rejected alternative dispositions which would allow the child to remain with his parents.

The evidence presented in the instant case in support of the allegation that Ryan was a dependent child was minimal. A doctor who first saw Ryan on September 4, 1980 testified that she observed at that time two bruises, one near Ryan's right eye and one on his back, which his mother, Marjorie S., "had difficulty in explaining." Appellant testified that she did not know what caused the bruises but that Ryan had fallen off a bed the previous day and may have sustained the bruises at that time. The doctor further testified that she had seen Ryan on a weekly basis between the time of the initial visit and the time of the hearing (about five weeks). When asked whether she had observed anything else that concerned her, the doctor replied:

4. 42 Pa.C.S.A. § 6301(b)(1).

No. I have to say that since I saw Ryan the time of the bruise [his mother] has been very good about keeping appointments and he has been clean. There has been no further bruises or anything of a suspicious nature.

A social worker testified that she was concerned about the care Ryan was receiving because "the father would not let [the mother] feed the baby when it woke up at night" and "they had the baby sleep in the bathtub." Mrs. S. explained that her husband did not want her to feed the baby at night because they were trying to get the baby on a feeding schedule. As to the baby sleeping in the bathtub, Mrs. S. described how they had put his crib mattress in the tub in such a manner as to prevent Ryan from bumping against the sides. She explained that they tried this arrangement because they thought that if the baby was separated from them, the noise they made would be less likely to awaken the baby and vice versa, and since they only had one bedroom, putting the baby in the tub was the best way to get him out of the bedroom. Furthermore, they discontinued this practice as soon as the social worker told them that it was not a good idea.

Finally, a probation officer testified that he accompanied two police officers to the appellants' residence on October 9, 1981 (the night before the petition alleging dependency was filed) pursuant to a call from an unnamed source alleging that the child was not being cared for because the appellants were having a party "involving the use of alcohol and marijuana." Upon arriving at the residence, the probation officer found the appellants and two friends playing cards and listening to music. He did see alcohol and marijuana but he said that he did not feel that the appellants were "out of the capacity." In fact, he specifically stated that "they were capable of caring for the child."

It is doubtful that this evidence standing alone would have been sufficient to support a finding that Ryan was, at the time of the hearing, "without proper parental care or control" and therefore dependent. It is even more doubtful

that it would support a finding that removing him from his parents' custody was "clearly necessary."

As stated above, we remand this case for reconsideration of the dependency petition. In view of the lapse of time since the original hearing there may be significant changes in the parties' positions due to changed circumstances. The lower court shall therefore direct the parties to present evidence to reflect current circumstances. If the court finds that the evidence presented does not establish clearly and convincingly that Ryan would be without "proper parental care and control" if returned to his parents, then it must immediately order Ryan returned to his parents' custody. If, on the other hand, the court finds that there is clear and convincing evidence that Ryan is dependent at the present time, then it must enter an order so stating and proceed to make a disposition that would be consistent with the principles discussed in this opinion.

It is important in this case, as in all custody cases, to obtain the speediest possible resolution. We therefore request the lower court to promptly conduct a hearing and render its final order.

Order vacated and case remanded for proceedings consistent with this opinion. Upon completion of those proceedings, a new appeal may be taken as provided by law.

DiSALLE, J., files dissenting statement.

DiSALLE, Judge, dissenting:

I respectfully dissent. In my judgment when, as the majority opinion points out, the parents "had difficulty in explaining" injuries to the infant's eye and back; had the child sleeping in the bathtub so that "the noise they made would be less likely to awaken the baby and vice versa"; and were found in possession of marijuana, they should not be entitled to the care, custody and control of their child.