455 A.2d 717

**In the Matter of Gerald YEAGER, a Minor Adjudicated Dependent.**

**Appeal of Gerald YEAGER.**

Superior Court of Pennsylvania.

Argued Oct. 12, 1982.

Filed Jan. 28, 1983.

---

492

Carmela R.M. Presogna, Assistant Public Defender, Erie, for appellant.

William A. Dopierala, Erie, for participating party.

Before CERCONE, President Judge, and WIEAND and BECK, JJ.

WIEAND, Judge:

May a juvenile be adjudicated a dependent child without a showing of parental fault? This is the primary issue in the instant appeal from an order declaring Gerald Yeager a dependent child under the Juvenile Act [1] and placing him for an indefinite period under the care and supervision of Children's Services of Erie County, with further placement at the Harborcreek School for Boys' Intensive Treatment Unit.[2] A secondary issue is whether the court, in view of the juvenile's history of anti-social, mental and emotional difficulties, could properly proceed under the Juvenile Act rather than the Mental Health Procedures Act. Our review discloses a proper adjudication and placement; and, therefore, we affirm the order of the trial court.

On July 6, 1981, Children's Services of Erie County filed a petition alleging that Gerald Yeager, born March 10, 1965, was "without proper parental care or control, subsistence, education as required by law, or other care or control

---

1. 42 Pa.C.S. § 6301 et seq.

2. The instant appeal has been filed on behalf of the juvenile. His mother has not appealed.

necessary for his physical, mental, or emotional health, or morals" and was, therefore, a dependent child.[3] On July 16, 1981, a hearing on the petition was held before a court-appointed master, at which both the juvenile and the petitioner were represented by counsel. The juvenile's mother, Mrs. Mary Lou Chambers, was also present but without counsel. The whereabouts of the juvenile's father, Charles Yeager, were unknown. All parties agreed, with minor exceptions, that the facts were as alleged in the dependency petition. That petition may be summarized as follows: Gerald Yeager is a sixteen year old boy with a history of mental health and behavior problems. He was committed to the Warren State Hospital for a thirteen month period beginning in May, 1979. Upon his release from Warren State, Gerald voluntarily entered the residential program at Sarah Reed Children's Center. His imminent release from Sarah Reed prompted the filing of the instant dependency petition. Incidents of violent physical confrontations with family members which resulted in personal injury and property damage, inappropriate sexual behavior with young relatives and the use of drugs and alcohol were characteristic of Gerald's behavior while at the home of his mother and stepfather. On occasion he also ran away from home and from the Children's Center. Mrs. Chambers does not dispute her inability to control Gerald's behavior and, indeed, at the adjudicatory hearing testified that he is uncontrollable in the family unit. Based upon these facts, the master recommended and the trial court ordered that Gerald Yeager be adjudicated dependent. Subsequent thereto, a dispositional hearing was held where testimony disclosed that Gerald was in need of increased attention and supervision within a secure setting. Gerald was accordingly placed under the supervision of Children's Services and ordered to undergo treatment at Harborcreek School for Boys, where necessary care, as well as an opportunity for vocational training, could be provided.

3. See: 42 Pa.C.S. § 6302.

■ The Juvenile Act defines a "dependent child" as a child who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals ...." 42 Pa.C.S. § 6302(1).[4] In order to find a child dependent under this provision, it must be established that the child is presently without proper parental care, and, if so, that such care is not immediately available. The fact of dependency must be proved by evidence that is clear and convincing. *In the Matter of Jackson,* 302 Pa.Super. 369, 373, 448 A.2d 1087, 1089 (1982); *In the Interest of H.B.,* 293 Pa.Super. 109, 114, 437 A.2d 1229, 1232 (1981); *In re A.E.M.,* 288 Pa.Super. 284, 288, 431 A.2d 1049, 1051 (1981); *In the Interest of Theresa E.,* 287 Pa.Super. 162, 172, 429 A.2d 1150, 1155 (1981); *In the Interest of Black,* 273 Pa.Super. 536, 542, 417 A.2d 1178, 1182 (1980); *In re Pernishek,* 268 Pa.Super. 447, 458, 408 A.2d 872, 878 (1979); *In the Interest of LaRue,* 244 Pa.Super. 218, 228, 366 A.2d 1271, 1278 (1976); 42 Pa.C.S. § 6341(c).

■ Neither the Juvenile Act nor Pennsylvania case law compels a showing of parental fault prior to an adjudication of dependency. In arguing that fault is a prerequisite, appellant misconstrues the nature of the proceeding. The focus of the inquiry in a dependency action is "whether *in fact* a child has received, or will receive, proper and necessary parental care ...." *In the Interest of K.B.,* 276 Pa.Super. 380, 390, 419 A.2d 508, 513 (1980). By so defining dependency, "the Act limits the Commonwealth's coercive interference with the family unit to those cases where the parents have not provided 'a minimum standard of care for a child's physical, intellectual and moral well being.' ... [P]arental care which is both 'necessary' and 'proper' is not the best care possible but that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In re*

---

**4.** The Juvenile Act provides eight other definitions of a dependent child, but none is here applicable.

*Pernishek, supra,* 268 Pa.Super. at 458, 408 A.2d at 877–878, quoting *In re Rinker,* 180 Pa.Super. 143, 148, 117 A.2d 780, 783 (1955). Although a finding of dependency frequently rests upon parental transgression, parental neglect or abuse is by no means essential. Rather, the compelling consideration is the ability and willingness of the parent or parents to provide necessary and proper care according to the special needs of their child or children. Thus, we have approved adjudications of dependency under circumstances where a parent, while clearly not at fault and indeed even capable of caring for a normal child, is unable to provide the sort of care required by the child's specialized needs. See: *In re Pernishek, supra* (child diagnosed as psychosocial dwarf for whom parents were unable to provide the care necessary for "catch-up" growth); *In re Whittle,* 263 Pa. Super. 312, 397 A.2d 1225 (1979) (mother unable to provide special therapy required for child's severe burns); *In re Rinker, supra* (child below average mentally may require more care than a normal child).

■ In the instant case, the evidence indicated clearly and convincingly the inability of Mrs. Chambers to control her son or to provide him with the sort of care necessary to correct his behavior and bring it into agreement with good morals and reasonable community standards. The adjudication of dependency was not erroneous merely because the juvenile's mother was not guilty of neglect or abuse. It was enough that she could not provide the care required to meet the juvenile's special needs.

■ It is also contended by appellant that the trial court erred when it failed to proceed under the Mental Health Procedures Act of July 9, 1976, P.L. 817, No. 143, § 101 et seq., 50 P.S. § 7101 et seq. This argument is premised upon language in the Juvenile Act, at 42 Pa.C.S. § 6356, which suggests that where "the evidence indicates that the child may be subject to commitment or detention under the provisions of ... the 'Mental Health and Mental Retardation Act of 1966' or ... the 'Mental Health Procedures Act,' the court shall proceed under the provisions of the appropriate statute."

However, the record fails to contain evidence, medical or lay, upon which the court could have based an involuntary commitment under the Mental Health Procedures Act. "Severe mental disability exists where, 'as a result of mental illness,' the person's 'capacity to exercise self-control, judgment and discretion in the conduct of his affairs ... is so lessened that he poses a clear and present danger of harm to others or to himself.' [50 P.S.] § 7301(a)." *In the Interest of Green*, 273 Pa.Super. 397, 401, 417 A.2d 708, 710 (1980). Here, there was no medical diagnosis and the lay evidence was entirely insufficient to permit a finding that the juvenile was mentally disabled. The dispositional order was properly based upon the recommendations and evidence presented to the hearing court that educational needs could be met through group home intensive treatment at Harborcreek. Therefore, we perceive no error in the trial court's dispositional order.[5]

Order affirmed.

---

**5.** This issue, moreover, is now to a large extent moot. The parties are agreed and have represented to this Court that after the court's placement order had been entered, the juvenile, while under the care and supervision of Children's Services of Erie County, was, in fact, placed at Warren State Hospital and has now been returned to the home of his mother.