473 A.2d 1365

**In re the Interest of Eugene HAYNES and Gena Haynes.**

**Appeal of POTTER COUNTY CHILDREN AND YOUTH SERVICES.**

**In re In the INTEREST OF Eugene HAYNES and Gena Haynes, Appellants.**

Superior Court of Pennsylvania.

Argued May 25, 1983.

Filed Nov. 4, 1983.

John B. Leete, Coudersport, for appellant (at No. 1275) and for participating party (at No. 1276).

Perry S. Patterson, Coudersport, submitted a brief on behalf of appellants (at No. 1276) and for appellees (at No. 1275).

Basil John Freeman, Port Allegany, no appearance nor briefs submitted on behalf of participating parties.

George Stenhach, Coudersport, no appearance nor briefs submitted on behalf of Babcock, participating party.

Before CAVANAUGH, ROWLEY and CIRILLO, JJ.

CIRILLO, Judge:

The unfortunate situation presented in this case is the result of a petition filed ten years ago on July 19, 1973, in the Juvenile Court docket of the Court of Common Pleas of Potter County. The petition alleged that Gena Mae Haynes and Eugene Paul Haynes were "deprived children." That same day, a court order awarded temporary custody of these two children to the Child Welfare Services of Potter County pending further hearing or judicial disposition. Nothing further occurred in this matter until eight years later, on April 9, 1981, when a petition for court-ordered voluntary placement of said children was filed. On April 21, 1981, pursuant to an informal hearing, a motion to withdraw this petition was granted. On April 30, 1981, a petition seeking an adjudication of dependency of said children was filed. On May 11, 1981, the natural mother, Mazie M. Halliday, filed a petition for a writ of habeas corpus to compel the Potter County Children and Youth Service to return her two minor children to her. On May 22, 1981, a petition to intervene was filed by the childrens' foster parents, the Meslers. Both children had been placed with the Meslers by the Children and Youth Services of Potter County. Subsequently, pursuant to the request of Potter County Children and Youth Services, the habeas corpus action and the juvenile court dependency action were consolidated. After various continuances, both matters were heard in a bifurcated hearing. Then, by order dated June 9, 1981, President Judge Harold B. Fink, ordered that the two children remain in the foster home for three to six months with increased visitation; the ultimate custody of the children to go to the natural mother at the end of this transitional period. Subsequently, a petition for re-hearing was filed with a request for reconsideration by the court. After a hearing, on December 7, 1981, the court entered an order denying reconsideration of the initial order. From this order, the Children and Youth Services of Potter County appealed. We affirm.

A petition to adjudicate dependency is under the purview of the Juvenile Act, 42 Pa.C.S.A. § 6301, *et seq.*[1] The underlying purpose of the Juvenile Act is as follows:

**§ 6301. Short title and purposes of Chapter.**

**(a) Short title.**—This chapter shall be known and may be cited as the "Juvenile Act."

**(b) Purposes.**—This chapter shall be interpreted and construed as to effectuate the following purposes:

(1) *To preserve the unity of the family whenever possible* and to provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this chapter.

. . . .

(3) To achieve the foregoing purposes in a family environment whenever possible, *separating the child from parents only when necessary for his welfare* or in the interests of public safety.

(emphasis supplied)

■ The position of this Court has been that a child should grow up as a part of its natural family. *In the Interest of LaRue,* 244 Pa.Super. 218, 366 A.2d 1271 (1976). Accordingly, the state should not intrude upon, and weaken the family. *In re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977). This Court has also held that its most compelling objective is to preserve family unity whenever possible; accordingly, the Juvenile Act provides that a child may not be found dependent absent clear and convincing evidence and may not separate a child from parents unless such separation is clearly necessary. *In Interest of Pernishek,* 268 Pa.Super. 447, 408 A.2d 872 (1979); *In re Donna W.,* 284 Pa.Super. 338, 425 A.2d 1132 (1981); *In Interest of Theresa E.,* 287 Pa.Super. 162, 429 A.2d 1150 (1981); 42 Pa.C.S.A. § 6335.[2] The clear and convincing

---

1. Act of July 9, 1976, P.L. 586, No. 142, § 2, eff. June 27, 1978. Substantially a reenactment of Act of December 6, 1972 (No. 333), § 1 (11 P.S. § 50–101).

2. **§ 6335. Release or holding of hearing**

   (a) **General rule.**—After the petition has been filed the court shall fix a time for hearing thereon, which, if the child is in detention or

standard that this court applies is used to determine whether proper parental care and control is available. 42 Pa.C. S.A. § 6302.[3] Therefore, only if the court concludes by clear and convincing evidence that such care and control is *not* available will it adjudicate a child dependent, and, if such a finding is not made, custody must be given to the parents immediately. Therefore, in determining whether a child is dependent, the court must ascertain what sort of parental care the child will receive if custody is given to the parents. *In Interest of Ryan Michael C.*, 298 Pa.Super. 417, 440 A.2d 535 (1982).

> shelter care shall not be later than ten days after the filing of the petition. If the hearing is not held within such time, the child shall be immediately released from detention or shelter care. A child may be detained or kept in shelter care for an additional single period not to exceed ten days where:
> (1) the court determines at a hearing that:
> (i) evidence material to the case is unavailable;
> (ii) due diligence to obtain such evidence has been exercised; and
> (iii) there are reasonable grounds to believe that such evidence will be available at a later date; and
> (2) *the court finds by clear and convincing evidence that:*
> (i) *the life of the child would be in danger;*
> (ii) the community would be exposed to a specific danger; or
> (iii) the child will abscond or be removed from the jurisdiction of the court.
> The court shall direct the issuance of a summons to the parents, guardian, or other custodian, a guardian ad litem, and any other persons as appearing to the court to be proper or necessary parties to the proceeding, requiring them to appear before the court at the time fixed to answer the allegations of the petition. The summons shall also be directed to the child if he is 14 or more years of age or is alleged to be a delinquent. A copy of the petition shall accompany the summons.
> (emphasis added)

**3. § 6302. Definitions**
   The following words and phrases when used in this chapter shall have, unless the context clearly indicates otherwise, the meanings given to them in this section:
   "Dependent child." A child who:

   (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals....

The thrust of the agency's appeal is not that the court's findings of fact were improper, but rather that the evidence presented at the two hearings provided clear and convincing evidence of dependency. We disagree. Initially, we are appalled by the circumstances in which the natural mother was originally deprived of these children, without a hearing and in violation of her due process rights and the mandates of the Juvenile Act.[4]

Our review of the lower court's findings of fact from the first hearing reveal that the appellee natural mother has had a rather unstable life in the past. She has been married twice and has also had numerous boyfriends. It seems that some of these men have had violent natures. The mother has also had a drinking problem, but has been "dry" for a year. Additionally, she suffers from a nerve disease.

The record from the second hearing reveals that the appellee has married again, to David Babcock with whom she had been living previously for one year. Mr. Babcock, who is employed full time, hopes to obtain a permanent position at his present place of employment. The appellee has successfully abstained from alcohol abuse. In addition, both the appellee and her new husband sincerely and deeply love the children.

In support of its argument, the appellant cites that the lower court judge found that the mother has had three other children who have been adopted; that one of the subject children, Eugene, feels that his mother prefers his sister;[5] and that the appellee has not always cared properly

4. *See* footnote 2, *supra.* This is the second case in Potter County arising from an apparent practice of the then Child Welfare Services of Potter County and the then President Judge of the county in or around 1973–74. This Court has already handed down a decision in the first such case in *Hurlburt v. Potter County Children and Youth Services,* 297 Pa.Super. 621, 442 A.2d 341, 1982, Memorandum Opinion. In that case, this Court affirmed the order of the lower court which mandated the return of the subject children to their parents.

5. The deposition of Dr. Widad Bazzoui disclosed that the boy suffers from a hyper-active condition which causes him to be extremely

for the hygiene of her son, i.e., changing his clothes and bathing him. Eugene Haynes also testified that his mother and step-father "yell at each other"; that he would run away if placed with his natural mother; and that his bed has been sold and he sleeps on a mattress on the floor when he stays with his natural mother.

While some of appellant's assertions are irrefutable, others were contradicted at the hearing. For instance, the lower court judge found as fact that the appellee has had three other children who have been adopted; that Eugene does feel that his mother prefers his sister to him; and that his natural mother does not always properly care for his hygiene. However, the appellee's sister testified that Eugene was well cared for and that his mother and step-father got along fairly well. She also testified that her sister and her husband had purchased new beds for the children. The appellee testified that she did not favor Eugene over his sister.

■ More importantly, we have carefully reviewed the record in this case and it clearly shows that the natural mother and her husband now have a stable environment in which to care for these children. The appellee and her husband both testified that they love and want the children with them and that they appreciate that there will be problems with the children regarding their adjustment to a different home situation. In addition, there is nothing in the record of any substance which would indicate that the appellee could not provide the proper care and control of

active and to engage in behavior which results in criticism from peers and parents or teachers. This criticism causes affected individuals to feel rejected and they lose faith in themselves. Dr. Bazzoui had been working with the child's foster mother to help her deal with his condition. He said that a parent who is not aware of the condition would find a child like this very difficult to deal with.

It is interesting that the appellant argued that the lower court did not give enough consideration to this doctor's deposition, but our review of his testimony further convinces us that with the proper help, which has already been given to the foster mother, there is no reason why the children's natural mother cannot be instructed on how to deal with her children and their condition.

her children. Therefore, we find that the agency has not met its burden and has not proved by clear and convincing evidence that the natural mother could not care for these children.

■ Appellant's next contention is that the court should have given greater weight to the interest of the children. This Court has specifically held that under the Juvenile Act the court is not free to apply a general standard, such as "the best interest of the child," but is confined by the restrictive definitions of who is a delinquent or a deprived child. *Stapleton v. Dauphin County Child Care Service,* 228 Pa.Super. 371, 324 A.2d 562 (1974); *In Interest of Pernishek, supra.* Appellant further asserts that the appellate decisions do not provide guidelines as to what role the interests of children have. This is emphatically untrue. This Court specifically held in *In the Matter of Jackson,* 302 Pa.Super. 369, 376, 448 A.2d 1087, 1090 (1982), "A finding of dependency is not the same thing as a determination of the best interests of the child; the question is whether the child is *presently* without proper parental care and, if so, whether that care is immediately available." (Emphasis in original). As we discussed previously, we cannot say that the natural mother cannot provide the proper care for these children. Therefore, appellant's argument is without merit.

Order affirmed.