525 A.2d 778

**In the Interest of A.V. and J.V., Minor Children.**

**Appeal of T.V., Natural Mother.**

Superior Court of Pennsylvania.

Submitted Sept. 4, 1986.

Filed May 5, 1987.

Petition for Allowance of Appeal Denied Oct. 19, 1987.

Before MARKER, Judge.

Gary A. Falatovich, Greensburg, for appellant.

Before CAVANAUGH, WIEAND and JOHNSON, JJ.

PER CURIAM:

Order Affirmed.

WIEAND, J., files a dissenting opinion.

WIEAND, Judge, dissenting:

The majority permits a mother, who is now separated from her husband, to be deprived of the custody of her young son and daughter because of physical abuse committed by the mother's husband upon one of the children. My review of the record fails to disclose that the children are dependent or that the mother has done or has failed to do anything which requires that her children be taken from her and given to another.

The appellant, T.V., and her husband, W.V., are the parents of two children. J.V. was born June 11, 1982, and A.V. was born April 30, 1983. On October 31, 1983, A.V., then six months old, was taken by her mother to Dr. Elias Alsabti because the child was suffering from a fever and respiratory problems. Believing that the child might be suffering from pneumonia, Dr. Alsabti ordered a chest x-ray. The x-ray revealed various fractures of the rib cage. Suspecting possible child abuse, Dr. Alsabti ordered a complete set of x-rays. These x-rays disclosed three fractured ribs in various stages of healing; a fractured left femur, approximately four to six weeks old; a fractured radius, about three months old; and, fractures of the tibia, about four weeks old.

After he had made these findings, Dr. Alsabti contacted the Westmoreland County Children's Bureau and informed a representative thereof that A.V. had sustained seven separate fractures which he believed to be the result of abuse. The Bureau initiated dependency proceedings pursuant to the Juvenile Act, 42 Pa.C.S. § 6301 et seq., and the Child Abuse Act of November 26, 1975, P.L. 438, 11 P.S. § 2201 et seq.

The Child Protective Services Law defines child abuse as follows:

[S]erious physical or mental injury which is not explained by the available medical history as being accidental, or sexual abuse or sexual exploitation, or serious physical neglect, of a child under 18 years of age, if the injury, abuse or neglect has been caused by the acts or omissions of the child's parents or by a person responsible for the child's welfare, or any individual residing in the same home as the child, or a paramour of the child's parent provided, however, no child shall be deemed to be physically or mentally abused for the sole reason he is in good faith being furnished treatment by spiritual means through prayer alone in accordance with the tenets and practices of a recognized church or religious denomination by a duly accredited practitioner thereof or is not

provided specified medical treatment in the practice of religious beliefs, or solely on the grounds of environmental factors which are beyond the control of the person responsible for the child's welfare such as inadequate housing, furnishings, income, clothing and medical care.

Act of November 26, 1975, *supra,* § 3, 11 P.S. § 2203. The Juvenile Act provides, in pertinent part, that a dependent child is a child who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." 42 Pa.C.S. § 6302. Under this statutory provision, a child is deemed dependent if (1) the child is presently without proper parental care, and (2) such care is not immediately available. *In re Yeager,* 309 Pa.Super. 491, 495, 455 A.2d 717, 719 (1983); *In re Jackson,* 302 Pa.Super. 369, 373, 448 A.2d 1087, 1090 (1982); *In re Theresa E.,* 287 Pa.Super. 162, 178, 429 A.2d 1150, 1158 (1981); *In re Black,* 273 Pa.Super. 536, 543, 417 A.2d 1178, 1182 (1980). "The law is clear that a child should be removed from [his or her] parent's custody and placed in the custody of a state agency only upon a showing that removal is clearly necessary for the child's well-being. In addition, this court has held that clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with her family are unfeasible." *In re K.B.,* 276 Pa.Super. 380, 393, 419 A.2d 508, 515 (1980). See: *In re Breisch,* 290 Pa.Super. 404, 413, 434 A.2d 815, 820 (1981).

Although our scope of review is broad, it is restricted by our inability to nullify the factfinding responsibility of the trial court. *In re Barclay,* 321 Pa.Super. 417, 425, 468 A.2d 778, 782 (1983); *In re Frank W.D.,* 315 Pa.Super. 510, 517, 462 A.2d 708, 711 (1983); *In re Black, supra,* 273 Pa.Super. at 543, 417 A.2d at 1182; *In re Custody of Neal,* 260 Pa.Super. 151, 152–153, 393 A.2d 1057, 1058 (1978). "We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear

before him." *In re Frank W.D., supra* 315 Pa.Super. at 517, 462 A.2d at 711. Therefore, we will not overrule his findings so long as they are supported by competent evidence. *Id.* Because of the policy of preserving family unity whenever possible, a finding of abuse and/or dependency must be based on "clear and convincing" evidence. *In re Leslie H.,* 329 Pa.Super. 453, 456, 478 A.2d 876, 878 (1984); *In re Haynes,* 326 Pa.Super. 311, 315, 473 A.2d 1365, 1366 (1983); *In re Barclay, supra,* 321 Pa.Super. at 422, 468 A.2d at 780; *In re Frank W.D., supra,* 315 Pa.Super. at 516, 462 A.2d at 711; *In re Long,* 313 Pa.Super. 47, 51, 459 A.2d 403, 405 (1983); *In re Yeager, supra; In re Jackson, supra,* 301 Pa.Super. at 373, 448 A.2d at 1089; *In re Mark T.,* 296 Pa.Super. 533, 537, 442 A.2d 1179, 1180 (1982); *In re Breisch, supra,* 290 Pa.Super. at 409, 434 A.2d at 818; *In re H.B.,* 293 Pa.Super. 109, 114, 437 A.2d 1229, 1232 (1981); *In re A.E.M., J.J.M., S.L.M.,* 288 Pa.Super. 284, 288, 431 A.2d 1049, 1051 (1981); *In re Theresa E., supra,* 287 Pa.Super. at 172, 429 A.2d at 1155; *In re S.M.S. 14599–A,* 284 Pa.Super. 9, 17, 424 A.2d 1365, 1369 (1981); *In re Black, supra,* 273 Pa.Super. at 542, 417 A.2d at 1182; *In re Pernishek,* 268 Pa.Super. 447, 458, 408 A.2d 872, 878 (1979); *In re Whittle,* 263 Pa.Super. 312, 316, 397 A.2d 1225, 1226 (1979); *In re LaRue,* 244 Pa.Super. 218, 228, 366 A.2d 1271, 1278 (1976); 42 Pa.C.S. § 6341(c). This requires that there be "testimony that is so direct and unambiguous as to enable the trier of fact to come to a sure determination, without conjecture, of the truth of the exact facts at issue." *In re Frank W.D., supra,* 315 Pa.Super. at 516, 462 A.2d at 711 (citations omitted).

Although the appellant-mother concedes that her infant daughter was abused by the child's father, she challenges the hearing court's finding that she was an abuser by omission. The trial court's use of the term "abuser by omission" was inappropriate. The connotation that an innocent parent has an absolute duty to prevent child abuse by the parent's spouse and that the parent will be branded an "abuser by omission" for failing to prevent such abuse is not consistent with the decided cases. Those cases hold,

rather, that a parent has a duty to protect his or her child from another's abuse when the parent knows or should know that the child is being abused by such other person.

*In re Barclay, supra,* was a case in which a mother had been aware that her husband had been inflicting corporal punishment upon her small children but had done nothing to protect them from excessive punishment. The Court concluded that the children had been both abused and dependent. Crucial to the court's determination was the admission by the mother that she had known her husband had abused the children and that she nevertheless had refused to leave the home in which he resided. *Id.* 321 Pa.Super. at 423, 468 A.2d at 781. *In re K.B., supra,* is also illustrative. There, a mother who initially had been unaware of the fact that her husband had been sexually abusing her daughter testified, *after* becoming aware of the charges against her husband, that if her husband were to be released from jail, she would resume cohabitation with him. *Id.* 276 Pa.Super. at 391, 419 A.2d 508. The Court concluded that the child was dependent, as the mother had demonstrated that she would voluntarily and knowingly expose her child again to the same sexual abuse to which the mother's husband had previously subjected the child. Because the mother had demonstrated an unwillingness to provide her child with the proper parental care by taking precautions to prevent further assault, the child was determined to be dependent. Finally, in the case of *In re S.M.S., supra,* the mother had actual knowledge that her eleven month old son was being physically abused by the child's father; however, she took absolutely no steps to protect her son from such abuse. Therefore, the child was found to be dependent. See also: *Commonwealth v. Cardwell,* 357 Pa.Super. 38, 515 A.2d 311 (1986).

In the instant case, the evidence does not show that appellant knew or should have known that A.V. was being abused physically. Although there was evidence that appellant herself had been abused by her husband, there was no evidence that she had ever observed him manifest abusive

tendencies toward his daughter. The several bruises which appellant had observed on the child had been explained to the mother's satisfaction and she had not suspected that the child had been abused physically by the father.[1] T.V.'s failure to detect abuse under the circumstances of this case did *not* imply that she had failed to exercise proper parental care of A.V. or that A.V. was dependent. In fact, once T.V. had been apprised of the true nature of A.V.'s injuries, she affirmatively demonstrated that she was willing and capable of providing A.V. with proper parental care by taking steps to prevent further abuse by W.V. These precautions included a discontinuation of cohabitation with her husband.

Dr. Elias Alsabti, the family pediatrician, testified that A.V. had been seen by him in his office on three separate occasions and that she had always appeared "healthy and well-taken care of." He also testified that T.V. was "very well protective" of her child. With respect to the child's injuries, Dr. Alsabti testified that "[w]ith children you really can not tell unless you expect something."

The majority relies upon testimony by Dr. Rashid, a radiologist, that A.V.'s fractures could not have been caused by the dropping of a toy truck or by her brother's falling upon her. This evidence tended to show that A.V. had been abused—a fact which appellant does not dispute. This fact, however, does not establish that appellant knew that her husband was abusing their child. Appellant was not medically trained, and Dr. Alsabti testified that unless one anticipated and was looking for signs of abuse, the explanations given to appellant for her child's bruises would have seemed entirely reasonable. The evidence also showed that when T.V. detected her child's bruises she immediately called her mother for advice. Appellant's mother testified that upon receiving the call, she went to her daughter's apartment and that when she arrived, the child was not crying excessively and did not appear to be

---

1. On one occasion, T.V. was told that A.V.'s bruises had resulted when she was accidentally struck with a toy truck by her brother. On another occasion, T.V. was told that A.V.'s bruise had been caused by her brothers' falling on her while she was lying on the floor.

hurt. Because the bruises did not seem serious, neither woman deemed it necessary to take A.V. to the hospital. The testimony was also that neither T.V. nor her mother had ever observed impairment of the child's movements sufficient to alert them to broken bones or other injury. Even Dr. Alsabti and several other physicians who saw the child during the period when manifestations thereof would have been detectable failed to diagnose a case of physical abuse. The evidence was undisputed that the diagnosis of a fracture in a non-ambulatory child is difficult at best.

For all of these reasons, I am unable to join the majority's conclusion that appellant should be held accountable in some way for injuries to her child with which she had nothing to do and which were ultimately detected only by x-rays. Instead, I would conclude that appellant's failure to detect the signs of abuse, under the circumstances of this case, was not an adequate basis for finding that she was an abuser by omission or that A.V. was a dependent child. The child was a non-ambulatory infant, and there was no evidence that her mother had failed to act reasonably to care for and protect the child in light of the knowledge which she possessed at any particular time. Appellant is now living separate and apart from her husband, and the evidence does not suggest that she is unable or unwilling to provide proper parental care or control for her daughter. A mother should not be deprived of her child, nor the child of its mother's love and care, merely because, as one psychologist opined, the mother has a passive personality. Therefore, I am persuaded that the trial court's findings of dependency and abuse with respect to appellant's daughter were not supported by any evidence, much less were its findings supported by "clear and convincing evidence."

Similarly, the evidence failed to support the trial court's finding that J.V. was a dependent child. There is no evidence whatsoever that this child was "without proper care or control." Nor is there evidence that he was abused physically or "by omission" by either his mother or his father. In short, J.V. was declared dependent because his

sister had been abused by the children's father. This was improper. A child cannot properly be found dependent solely because a sibling is dependent. This Court has said:

> It is true that a finding of dependency can be made on the basis of prognostic evidence. *In the Interest of Black*, 273 Pa.Super. 536, 417 A.2d 1178 (1980) (finding of dependency of newborn infant affirmed where parents' two previous children died because of improper care and precautions taken by the parents); *In the Matter of DeSavage*, 241 Pa.Super. 174, 360 A.2d 237 (1976) (prognostic evidence acceptable but inadequate to support determination of dependency where evidence mainly dealt with inexperience of youthful parents of newborn infant). *However, a child should not be found dependent on the basis of little or no evidence simply because his siblings are dependent.* See *In the Matter of George*, 272 Pa.Super. 173, 414 A.2d 1063 (1979). A finding that a child is without proper parental care is very serious, for it may color the child's future attitude toward and relationship with his parents.

*In re Theresa E., supra*, 287 Pa.Super. at 173, 429 A.2d at 1156 (emphasis added).

There was no evidence whatsoever that appellant had failed to provide adequate parental care for her son. The psychologist upon whose testimony the Children's Bureau relied admitted in her testimony that she had not had an opportunity to observe the nature of appellant's relationship with her son. There also was no evidence that J.V. had been adversely affected by the abuse of his sister. Nevertheless, the trial court concluded that J.V. was a dependent child because there existed a possibility that if his father at some future time attempted to abuse him, his mother, who had a passive personality, would be unable to protect him. This was a wholly inadequate basis upon which to determine that J.V. was dependent. See: *In re Jackson, supra*.

A court may find a child dependent only upon clear and convincing evidence which demonstrates that a child is presently without proper parental care and that such care is

not immediately available. With respect to the children in this case, neither fact was proven. A child should not be separated from a parent unless separation is clearly necessary (i.e., no other alternatives are feasible). *In re Pernishek, supra,* 268 Pa.Super. at 457, 408 A.2d at 877; 42 Pa.C.S.A. §§ 6301(b)(1) and (3) and 6341(c). See also: *Rinker Appeal,* 180 Pa.Super. 143, 148, 117 A.2d 780, 785 (1955). The necessity for separating the children from their mother in this case was simply not shown. Appellant has been separated from and no longer lives with her husband, and there is a total lack of evidence to support a finding that appellant cannot or will not adequately care for her children.

I dissent.