381 Pa. Superior Ct. 300 (1988)
553 A.2d 979
In re T.D.
Appeal of D.D., Natural Mother of T.D., a Minor Child.
Appeal of T.D.
Supreme Court of Pennsylvania.
Argued April 26, 1988.
Filed December 29, 1988.
*301 Marian C. Nowell, Philadelphia, for D.D., appellant.
Samuel B. Magdovitz, Philadelphia, for T.D., appellant.
M. Robin Maddix, Philadelphia, for appellee.
Before CAVANAUGH, WIEAND and DEL SOLE, JJ.
DEL SOLE, Judge:
This is an appeal from an order adjudicating the Appellant minor to be dependent. We reverse.
The facts as developed on the record are the following. Appellant T.D., a female minor, was born in 1976. Appellant D.D. is the child's mother. During the course of her young life, T.D. has been the victim of two sexual assaults, the first occurring at the age of three and the second occurring at the age of eight. She has also suffered through the accidental death of a younger sister. At a detention hearing held on June 20, 1986, the court observed that there was a need for some supervision on the part of the Department of Human Services (DHS). However, finding that the circumstances did not warrant removing the child from the custody of her mother, the court concluded *302 that Services to Children in their own Home (SCOH) would be the appropriate alternative:
. . . [T]here is a clear need for some SCOH services based upon what this court has heard . . . We can make this a DHS referral at this stage of the game. DHS will supervise. The child will be returned to the natural mother . . .
(N.T. 6/20/86 at 48-49)
Thereafter in January of 1987, an adjudicatory hearing was held[1] at which time the court heard testimony from various witnesses, including T.D.'s principal, a schoolteacher, and several individuals associated with the DHS. Evidence adduced at the hearing indicated that Appellant mother had failed to fully comply with the SCOH requirement of regular therapy visits for T.D. In addition, both the principal and teacher testified concerning various behavioral problems which the child had manifested at school, noting that this constituted a serious departure from T.D.'s previous conduct. Finally, the court was able to question Appellant mother following examination by counsel. At the conclusion of testimony and closing arguments, the court made the following observations:

*303 In the mind of this Court that parent has been reluctant to provide such, and, in view of that, the Court believes that this child is at risk. In view of the effects of the kind of risk  that is to say, this risk has the potential of interfering with the child's full life  it is better off to have this issue addressed in this sense of if it does not exist, there would be no need for continued therapy. On the other hand, if it does exist, there is a need to commence therapy as soon as possible. In the mind of this Court the risk is of such a nature as to require that it be addressed as soon as possible.
Therefore, this Court is going to adjudicate this young lady to be dependent, and the Court will follow through with requiring supervision on the part of the Department of Human Services. However, the Court believes there is a clear and present threat of injury to this youngster and the injury is of such a serious nature  that is to say, although it may not be conspicuous, the Court believes mental illness exists and that mental illness may not be clear and conspicuous to those who may be in close contact. On the other hand, the effects of sexual assault are indelible and, therefore, have to be addressed as soon as possible.
(N.T. 1/6/87 at 116-117).
In accordance with the above, the court made an adjudication of dependency and ordered that SCOH services be continued. The appellants have taken an appeal therefrom.
The following issues have been presented for our consideration:
1) Did the lower court err in denying Appellants' Motion to Dismiss the original petition because it stated only allegations of abuse rejected at the detention hearing and failed to allege facts which would support a finding that the child was without proper parental care or control?
2) Did the lower court err in denying Appellants' Motion to Dismiss the Amended Petition because the only new ground alleged was that Ms. D. failed to cooperate with *304 Children and Youth agency supervision without alleging that the child was harmed thereby?
3) Did the lower court violate the procedural requirements of the Juvenile Act and Appellants' due process rights when it based its finding of dependency upon the child's alleged need for therapy concerning prior incidents of sexual abuse even though that ground had not been stated in the original petition or the amended petition?
4) Did the lower court err in adjudicating the child dependent?
A. Did the lower court err in finding the petitioner presented clear and convincing evidence that the child was without proper parental care or control?
B. Did the lower court err in finding that the petitioner proved at the adjudicatory hearing that the child suffered from "post-rape syndrome"?
After a comprehensive review of the record and controlling authority, we reverse the trial court's adjudication of T.D. as a dependent child. We hold that such interference in this family is unwarranted because the Commonwealth has failed to show by the requisite clear and convincing evidence that T.D. is without "proper parental care and control, subsistence, education as required by law, or other care or control necessary for [her] physical, mental or emotional health, or morals." 42 Pa.C.S.A. § 6302 et. seq.; In Interest of Theresa E., 287 Pa.Super. 162, 172, 429 A.2d 1150, 1155 (1981); See, 42 Pa.C.S.A. § 6341(c).
Our court has stated that it is "a very serious matter indeed to allege that a child is a dependent child and thereby invite the intervention of agencies of the state into a parent's care of that child." In Interest of Theresa E., supra, 287 Pa.Super at 171, 429 A.2d at 1155. In this decision to intervene the State must balance its interest in protecting and caring for minor children against its interest in protecting and caring for one of our most important institutions, the family. In this regard, this court has frequently cited the following policy statement:

*305 On the one hand, the State has an interest in requiring parents to respect the duty they owe their children. On the other hand, in requiring that respect, the State must be cautious not to intrude upon the family to the point of weakening it as one of our most important institutions. The way to resolve this problem is to impose restraints upon the State, not to prevent its officials from reacting to a child's plight, but to prevent them from overreacting. No doubt one official will be sensitive and wise, but another will be a self-righteous prig; and that is the one we must guard against, for backed by the State, his power may overwhelm any parent. In the Interest of LaRue, 244 Pa.Super. 218, 225-26, 366 A.2d 1271, 1274-75 (1976), cited in, In Re Custody of Frank, 283 Pa.Super. 229, 237-38, 423 A.2d 1229 (1980).
Because a finding that a child is without proper parental care is very serious, perhaps coloring the child's future attitude toward and relationship with a parent, the court must base its decision on clear and convincing evidence of parental failure to care for the child and whether such care is immediately available. In Re Barclay, 321 Pa.Super. 417, 422, 468 A.2d 778, 781 (1983); In Re Custody of Frank, supra. 283 Pa.Super. at 240, 423 A.2d 1229.
Our standard of review in cases of dependency is broad. In Re Frank W.D., 315 Pa.Super. 510, 517, 462 A.2d 708 (1983). We must find clear and convincing evidence in the record that T.D. was without proper parental care and control. The trial court bases its finding of dependency on the mother's failure to fully comply with the SCOH requirement of regular therapy visits for T.D. The trial court held that the child was "at risk" to develop depression and other mental problems because of the sexual abuse she had experienced, and therefore therapy and counselling were required. (Trial Court Opinion at 9-10).
In contrast to the trial court's view, our review of the record leads us to believe that these conclusions are based on a very shaky evidentiary edifice. This edifice is built on conjecture and on subjective reactions to heinous incidents *306 of sexual abuse of a young child, which happened outside the control of the mother, instead of the required comprehensive and penetrating inquiry into the circumstances of T.D.'s home life, and the ability of the mother to care for her child. In Re Custody of Frank, 283 Pa.Super. 229, 244-45, 423 A.2d 1229 (1980); In Interest of H.B., 293 Pa.Super. 109, 115-16, 437 A.2d 1229 (1981).
For instance, the testimony of Mr. Sherwood Nichols, a family therapist with Hall Mercer in Philadelphia, was introduced to establish the need for therapy concerning rape trauma syndrome. Mr. Nichols' contact with T.D. and her mother was minimal, he only saw her twice, and although he was aware of the incidents of sexual abuse, he stated that the primary issue for the therapy was grief over the accidental death of T.D.'s younger sister. He states that his conclusion that "T.D. would benefit from some kind of counselling" was based on the testimony that he had heard at the trial. (N.T. at 67-70, 1/6/87). He had not personally observed any harmful psychological effects from the incidents of sexual abuse (N.T. at 73, 1/6/87), and in fact, had decided at the intake interview to concentrate on the issue of grief, although aware of the abuse. Clearly, his evidence lacks serious merit in regard to whether there was any apparent necessity for counselling pertaining to the sexual abuse.
Next, there is testimony from Mr. Ingo Schamber who, as an employee of the Department of Human Services, had "case management" responsibilities in T.D.'s case. Mr. Schamber had absolutely no personal conduct with T.D., and yet testified to the need for therapy in this case while admitting that not every case of sexual abuse results in an ongoing need for some sort of therapy. (N.T. at 34, 1/6/87). Thus, of these two witnesses, one admittedly had no personal contact with T.D. and the other based his opinion on in-court testimony.
Apart from Mr. Erskine Hicks, who counselled T.D.'s mother, not T.D. herself, no other expert witnesses testified. Thus the trial court relied on the expertise of two *307 witnesses, neither of whom is a psychologist or psychiatrist, to show that T.D. was "at risk" of potentially serious psychological harm because of the mother's failure to take T.D. to counselling. On this proof it can not be said that the requisite showing of harm resulting from the absence of proper parental care or control necessary for mental or emotional health has been made. In re Custody of Frank, 283 Pa.Super. 229, 239, 423 A.2d 1229 (1980).
This Court has urged the trial courts to make a comprehensive and searching inquiry in these cases. It may not find a child dependent absent clear and convincing evidence which has has been defined as testimony that is direct and unambiguous as to enable the trier of fact to come to a sure determination. In re Frank W.D., 315 Pa.Super. 510, 462 A.2d 708 (1983). Far from a comprehensive and searching inquiry, we have precious little evidence of the parenting ability of T.D.'s mother: no reports of home visits, nor professional evaluations of the home environment. While the record shows testimony from one teacher and a principal concerning disturbing trends in T.D.'s behavior, we lack evidence from involved professionals, which is normally generated by a comprehensive inquiry, not only of T.D.'s psychological condition but of the home situation and the mother's ability to care for her child.
Such information is necessary in determining dependency. For instance, in In re Breisch, 290 Pa.Super. 404, 434 A.2d 815 (1981), a case in which the child was found dependant because of the parent's failure to provide therapy for her son's severe speech disability, a full picture of the child's problems as well as the home environment was developed. Speech pathologists periodically evaluated the child's speech development; there was a Home Visitor reporting on her attempts to teach parenting skills to this parent of a child (like T.D.) with special needs, and testimony from caseworkers who visited the home regularly and reported on a chaotic and harmful home life.
This court has stated that proper parental care, "is that care which (1) is geared to the particularized needs of the *308 child and (2) at a minimum is likely to prevent serious injury to the child." In Interest of Pernishek, 268 Pa.Super. 447, 458, 408 A.2d 872, 878 (1979). Here we lack clear evidence of the child's particularized needs and of the particular harm against which T.D. needs protection. The court has the power to order home visits while the dependency action is pending, and in fact is encouraged to do so as part of its obligation to make a comprehensive inquiry. However, in failing to offer that information on the record, the Commonwealth has not proved the existence of either particularized needs or a particular harm to be guarded against.
Under the Act, a court may not declare dependency and order state supervision solely because it would be in the child's best interest to have therapy. Much more must be shown. The Legislature has sought to achieve the proper balance between a parent and the State by requiring that a specifically high quality of proof be forthcoming. In re Custody of Frank, 283 Pa.Super. 229, 241, 423 A.2d 1229 (1980). As such proof was not forthcoming in this case, we reverse the trial court's finding of dependency.
ORDER REVERSED. JURISDICTION RELINQUISHED.
CAVANAUGH, J. files a dissenting opinion.
CAVANAUGH, Judge, dissenting:
This is an appeal from an order entered in the Court of Common Pleas of Philadelphia County, adjudicating the appellant minor to be dependent. I disagree with the majority's disposition of this matter and would instead affirm the decision of the court below.
I accept the majority's statement of the facts and issues raised in this case and would adopt them as part of my dissent.
The Juvenile Act defines a dependent child in pertinent part as one who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional *309 health, or morals;" 42 Pa.C.S.A. § 6302(1) (Definition of "Dependent Child")[1] It is beyond peradventure that a finding of dependency must be supported by clear and convincing evidence. Matter of Yeager, 309 Pa.Super. 491, 495, 455 A.2d 717, 719 (1983). (citations omitted). See also Fallaro v. Yeager, 364 Pa.Super. 408, 420, 528 A.2d 222, 228 (1987) ("[T]he court must be convinced by clear and convincing evidence that the child fits into one of the categories established in section 6302 before it can adjudicate the child as dependent.") Clear and convincing evidence may be defined as "testimony that is so direct and unambiguous as to enable the trier of fact to come to a sure determination, without conjecture, of the truth of the exact facts at issue." In Re Frank W.D., 315 Pa.Super. 510, 516, 462 A.2d 708, 711 (1983). Moreover, the standard to be applied in determining whether a child is dependent is not "best interests", rather, it must be shown that the child is "presently without proper parental care and, if so, whether such care is immediately available." In Re Barclay, 321 Pa.Super. 417, 422, 468 A.2d 778, 781 (1983) (quoting In the Interest of Pernishek, 268 Pa.Super. 447, 458, 408 A.2d 872, 877-878 (1979)). Finally, interference with the rights of a legal custodian will not be sanctioned in the absence of an adjudication of dependency. See 42 Pa.C.S.A. § 6341(a). As noted therein:
§ 6341. Adjudication
(a) General rule.  After hearing the evidence on the petition the court shall make and file its findings as to whether the child is a dependent child, or if the petition alleges that the child is delinquent, whether the acts ascribed to the child were committed by him. If the court finds that the child is not a dependent child or that the allegations of delinquency have not been established it shall dismiss the petition and order the child *310 discharged from any detention or other restriction theretofore ordered in the proceeding.

(emphasis added)
The appellants first contend that the lower court erred in failing to dismiss the original dependency petition filed by the DHS since it failed to allege facts which establish that T.D. was without proper parental care or control. However, a review of the petition reveals the fallacy of such an assertion. Following the detention hearing, the DHS filed a petition which included allegations that the child had been sexually abused on two separate occasions, that her mother had refused to cooperate with the Department, and that there was evidence of physical abuse on D.D.'s part. The petition, which was filed on September 17, 1986, went on to state that the child had not received medical treatment for an eye injury which she had sustained. Subsequent to the filing of the dependency petition and pursuant to the court's direction, amendments were filed in which the DHS again alleged that appellant mother had failed to comply with the required therapy schedule. I consider the foregoing to be sufficient grounds in support of the finding that D.D. failed to provide "proper parental care or control" in violation of 42 Pa.C.S.A. § 6302. Even if it could be said that the original petition was incomplete, the amendments clearly allege a pattern of conduct on the part of appellant mother that was detrimental to her child. I do not believe we can allow retrospective procedural imperfections to defeat the court's obligation to provide a sound remedy for the demonstrated needs of a child.
At both the detention and adjudicatory hearings there was ample evidence to suggest that T.D. was emotionally disturbed and manifested such disturbances through unacceptable conduct. Whereas the child had previously had a reputation for being a pleasant little girl who consistently maintained an excellent academic record,[2] the testimony *311 indicated that she had suffered a significant change in behavior. In one incident, T.D. reacted violently to a normal reprimand from the principal of her school. In another incident, she demonstrated bizarre behavior by walking down a hallway in the company of a schoolfriend with a piece of paper held over her buttocks. Witnesses who had been recognized as experts in the area of sexual abuse indicated that T.D. would benefit from therapy. Mr. Inigo Schamber, a DHS supervisor who had been involved in the case, observed that, "Based on the history of this case, the Department would recommend that [T.D.] be adjudicated dependent and that she have DHS supervision and therapy provided with Hall Mercer, and that mother cooperate with SCOH services." (N.T. 1/6/87 at 28) Although Mr. Schamber admitted that he had never had any personal contact with appellant minor, it was noted that he was involved in over one hundred cases of child abuse (specifically rape or sexual abuse) as either a worker or a supervisor with the Department. Sherwood Nichols, a family therapist who holds a Bachelor's Degree in psychology and a Master's Degree in counseling, testified that he had experienced some difficulty in setting up appointments to meet with appellant mother, noting that "I believe that she was working or something to that effect, or she just didn't schedule an appointment." (N.T. 1/6/87 at 69) The witness voiced an opinion that T.D. would benefit from "some kind of counselling", adding that this was based on testimony "and some of the things that I have learned since being here." (N.T. 1/6/87 at 70).
This court has defined rape trauma syndrome in the following manner:
Rape trauma syndrome is one kind of post-traumatic stress disorder. The essential feature of post-traumatic *312 stress disorder is the development of characteristic symptoms after a psychologically traumatic incident that is usually beyond the range of ordinary human experience. Those symptoms typically involve re-experiencing the traumatic incident, numbing the responsiveness to, or lessened involvement with, the external world, and a variety of autonomic, dysphoric or cognitive symptoms.
Commonwealth v. Pickford, 370 Pa.Super. 444, 450 n. 2, 536 A.2d 1348, 1351 n. 2 (1987) (citations omitted). From the foregoing it is apparent that rape trauma syndrome has received some recognition in this Commonwealth. Moreover, while there is a divergence of opinion as to the admissibility of testimony regarding the syndrome in various situations. See Commonwealth v. Gallagher, 353 Pa. Super. 426, 510 A.2d 735 (1986) (Cavanaugh J., dissenting) vacated and remanded 519 Pa. 291, 547 A.2d 355 (1988),[3] we are concerned herein with the issue of whether such a condition exists and could conceivably pose a threat to the victim if left untreated. From the testimony submitted at the adjudicatory hearing, it is my belief that therapy is warranted in the case sub judice. This being so, appellant mother's failure to avail T.D. of professional counseling constitutes a threat to the child as contemplated by the Juvenile Act. Accordingly, I would conclude that both the original and amended dependency petitions allege sufficient facts in support of the finding that D.D. failed to provide proper parental care and control to her child. Furthermore, it was not necessary that the petition allege that D.D.'s failure to cooperate harmed her daughter. Where there *313 was evidence to demonstrate that services which would have been beneficial were not administered to T.D., the lower court was justified in concluding that the child was suffering some degree of harm. In light of the above, I find no merit in the appellants' first and second claims.
Appellants next contend that they were denied due process insofar as the original and amended petitions did not contain the allegation that therapy was needed in connection with the incidents of sexual abuse. This claim is totally devoid of merit. Both petitions indicate that T.D. was the victim of sexual abuse. Both petitions note that appellant mother failed to cooperate with the DHS. While the first petition was primarily concerned with allegations of physical abuse on D.D.'s part,[4] the amended petition contains the following language:
On November 5, 1986 following an in-chambers discussion of DHS's recommendations regarding [T.D.'s] need for counseling following two rapes and the death of a sibling, Judge Braxton ordered [D.D.] to cooperate with SCOH services and to attend therapy sessions.
Since November 5, 1986, [D.D.] has failed to cooperate with Judge Braxton's Order. [D.D.] kept one (1) appointment with the SCOH worker, Mr. Hicks. The one appointment was on November 19. At the November 19 meeting [D.D.] was cooperative but alluded to the fact *314 that her counsel had let her to believe that she did not need to cooperate fully because the Court's order was going to be appealed.
As this court noted in In Interest of M.B., 356 Pa.Super. 257, 514 A.2d 599 (1986), affirmed 517 Pa. 459, 538 A.2d 495 (1988), "Due process requires that the litigants receive notice of the issues before the court and an opportunity to present their case in relation to those issues." Id., 356 Pa.Super. at 260, 514 A.2d at 601. Since I believe that the appellants were adequately apprised of the issues in question, I would find that their claim cannot be sustained on these facts.
The appellants' final claim is a two-part challenge to the lower court's adjudication of dependency. For the reasons discussed in regard to the appellants' first and second claims, I would conclude that the lower court appropriately determined that T.D. should be adjudicated a dependent. In light of the foregoing, there is no merit to this claim.
NOTES
[1] Subsequent to the detention hearing of June 20, 1986, but prior to the adjudicatory hearing of January 6, 1987, two additional hearings were held on November 5, 1986 and December 12, 1986. At the November 5th proceeding, both T.D. and D.D. were given an opportunity to testify, and counsel for appellant-mother made a motion to dismiss on the grounds that there were "insufficient factual allegations before the court to invoke the court's jurisdiction . . ." (N.T. 11/5/86 at 8) In response to the allegations of lack of jurisdiction, the court provided for the filing of the amendments, stating as follows: "What this court is going to do is allow the County time to file the appropriate petitions . . ." (N.T. 11/5/86 at 9). The December 12, hearing dealt with a motion for reconsideration which was ultimately denied, and the matter was rescheduled for a dispositional hearing. In addition, counsel for the DHS withdrew a motion to quash that had been filed previously. Although it would appear that the November 5th hearing had been listed as an adjudicatory hearing and testimony from the appellants was heard at that time, we will refer to the January 6, 1987 hearing as the actual adjudicatory proceeding since most of the testimonial evidence was provided on that date.
[1] We have omitted mention of the various other grounds on which a child could be adjudicated dependent pursuant to 42 Pa.C.S.A. § 6302 as none are applicable in the case at bar.
[2] According to Soledad Gillespie, principal of the school attended by T.D.

. . . [T.D.] was essentially a child who loved school and loved learning and took great pride in being one of the brightest in the class. She still, obviously, has that intelligence and could excel should she be able to bring all of her energy to bear on it; but [T.D.] began to be more resistant and become angry at which is the normal correction of all youngsters in group situations.
(N.T. 1/6/87 at 52)
[3] "It is clear that the only purpose of the expert testimony was to enhance the credibility of the victim. . . . Such testimony would invest the opinions of experts with an unwarranted appearance of authority on the subject of credibility, which is within the facility of the ordinary juror to assess. We therefore hold that expert testimony on rape trauma syndrome should not have been admitted in the trial of this case." 519 Pa. at 297, 547 A.2d at 358-359. Gallagher dealt with the identification of a rapist by his victim, and the rape trauma syndrome testimony was used to explain how the victim was able to identify her assailant four years after the attack. In the present case, we are concerned not with the issues of identification and credibility, but rather with the emotional and psychological condition of the victim as this pertains to appropriate treatment.
[4] At the detention hearing on June 20, 1986, a social worker initially assigned to the case noted that during a conversation with D.D. the latter admitted that she beat the child. The following exchange occurred on direct examination:

. . . Mother said, "Yes, I beat her and I am going to beat her again," which would be that night.
.....
Q. Did she indicate to you why she had beaten the child?
A. Mother said [T.D.] tried to hit her Friday morning, that [T.D.], quote, Raised her hand to me.
Q. The mother responded by saying what?
A. That she punched her, beat her for raising her hand.
(N.T. 6/20/86 at 18-19).
The lower court's reluctance to remove T.D. from her home would indicate that the court's adjudication of dependency was motivated more by concerns over the psychological harm caused by the sexual abuse than by the allegations of physical abuse.