571 A.2d 470

In re Christopher SWOPE, Angela Mancini, Stephanie Mancini.

**Appeal of Geraldine SWOPE.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1989.

Filed March 15, 1990.

Lisa P. Fevola, Harrisburg, for appellant.

Georgene Siroky, Pittsburgh, for appellee.

James A. Esler, Pittsburgh, for Children and Youth Services, participating party.

Before CIRILLO, President Judge, and WIEAND and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from a dependency order dated April 21, 1989, by which appellant's minor child, Christopher, was adjudicated "dependent" under the Juvenile Act (the "Act"). 42 Pa. C.S.A. § 6301 *et seq.* Although the child is currently in the physical custody of his mother, appellant herein, the order placed him in the legal custody of Allegheny County Children and Youth Services ("CYS").[1] Appellant filed this appeal after Christopher was adjudicated dependent and removed from her physical custody. Appellant contends that CYS failed to sustain its burden of showing that Christopher was "dependent" under the Act.[2] We agree and, accordingly, vacate the order below and remand for proceedings consistent with this opinion.

Appellant is the natural mother of Christopher. On April 5, 1989 CYS received a report that Christopher, then age 12, and his two sisters, ages 9 and 5, had been mistreated by their mother. CYS obtained an emergency custody order and removed the three children from appellant for questioning. After questioning the children, CYS determined that only the allegations about Christopher could be substantiated; the younger children were returned to appellant and Christopher was placed with his maternal grandparents. On April 18, 1989, all three children met with Dr. Neil Rosenblum for a psychological evaluation. Dr. Rosenblum believed Christopher to be telling the truth and recommended that he be left in the care of his grandparents. Dr. Rosenblum also felt that the two younger children were not

1. At that time, Christopher was permitted to live with his maternal grandparents. Subsequently, at his request, Christopher has been returned to appellant's physical custody.

2. Appellant also contends that (1) the seizure of her children violated both her right and the right of her children to be free from unreasonable search and seizure and (2) the court erred in allowing Dr. Neil Rosenblum to testify as an expert and allowing him to give hearsay testimony over her objection. Because of our disposition of appellant's first claim, we need not address these issues.

in danger and could be left with their mother. On April 21, 1989, a hearing was held to determine whether the three children were "dependent." Testimony was presented by Dr. Rosenblum, the CYS caseworker, Christopher, appellant, and others. The central dispute at the hearing was whether Christopher's allegations that he had been abused were credible. At the conclusion of the hearing, the court, finding Christopher credible and appellant not credible, adjudicated Christopher dependent. *See* N.T. April 21, 1989 at 101–03. Legal custody of Christopher was given to CYS. Disposition of the other two children was deferred until July 21, 1989. This appeal followed.

▌ The burden of proof in a dependency proceeding is upon the petitioner attempting to remove custody from the parent. The petitioner must show that the juvenile is *without proper parental care,* and that *such care is not immediately available. See In re T.D.,* 381 Pa.Super. 300, 553 A.2d 979 (1988). These facts must be proved by evidence that is clear and convincing. *See In the Matter of Yeager,* 309 Pa.Super. 491, 495, 455 A.2d 717, 719 (1983); *In Interest of Ryan Michael C.,* 294 Pa.Super. 417, 420, 440 A.2d 535, 536 (1982); *see also* 42 Pa. C.S.A. § 6341(c).

▌ In the case, the court found Christopher dependent because "he's without proper parental care or control." N.T. April 21, 1989 at 101. In making this determination, however, the court *must* consider "not only what sort of parental care the child received in the past, but also what sort of parental care the child will receive if custody is given to the parents." *Interest of Ryan Michael C., supra* at 420, 440 A.2d at 536 (citing *In the Interest of K.B.,* 276 Pa.Super. 380, 419 A.2d 508 (1980); *In the Interest of Clouse,* 244 Pa.Super. 396, 368 A.2d 780 (1976)); *see also In re T.D., supra; In re Miller,* 380 Pa.Super. 423, 552 A.2d 261 (1988). Because a finding that a child is dependent is very serious and could potentially effect a child's future attitude toward and relationship with his parent, we have urged trial courts to make comprehensive inquiries before concluding that a child is without proper parental care or

control. *See In re T.D., supra; In re Frank W.D.,* 315 Pa.Super. 510, 516, 462 A.2d 708, 711 (1983). In this case, it does not appear that such a comprehensive inquiry was made.

■ The testimony presented in support of the dependency petition focused on alleged acts of abuse by appellant and her boyfriend. In particular, the CYS caseworker testified that, when she interviewed Christopher, he told her that (1) his mother made him eat mustard, pepper, and vinegar sandwiches; (2) shaving cream was put in his mouth when he lied; (3) he was not allowed outside to play; (4) when he was hungry he was locked between the front door and the screen door; (5) his mother threw water in his face to awaken him; and (6) he was not allowed to watch television. *See* N.T. April 21, 1989 at 7–8. The CYS caseworker also stated that Christopher's initial allegations led to him being removed from appellant's custody. She went on to say that, on the morning of the hearing, Christopher admitted to her that he had lied about the initial allegations. *Id.* at 12. Dr. Rosenblum then testified about his examination of Christopher and the other children. Dr. Rosenblum stated that when Christopher met with him, he had made allegations that were similar to the ones to which the CYS caseworker testified. *Id.* at 18. Dr. Rosenblum also spoke with Christopher's grandfather who reluctantly confirmed that the alleged acts of abuse had occurred. *Id.* at 19. Dr. Rosenblum admitted that he had never spoken with appellant or Christopher's school concerning the allegations. *Id.* at 20–21, 36. The final witness presented in support of the petition was Christopher. In his testimony, Christopher recanted his statement that he lied that morning to the CYS caseworker. *Id.* at 54. However, when asked to tell the court what his initial allegations had been, the only specific instance of abuse he could recall was being shut between the door and screen door. *Id.* at 55. Despite his allegation to the contrary, on cross-examination, Christopher admitted that he had been allowed to play outside. *Id.* at 58–59.

Appellant presented testimony disputing the allegations of abuse. In particular, Janey Nock, a friend of appellant's, testified that she had seen Christopher playing outside and riding a bike. *Id.* at 65. She also testified that appellant cooked healthy balanced meals for Christopher and the other children. *Id.* at 65–66. With regard to discipline, Nock testified that to the best of her knowledge, appellant yelled at her children but had not harmed them physically or made them eat mustard, pepper, and vinegar sandwiches. *Id.* at 67. Appellant also took the stand and denied the allegations. *Id.* at 88. Specifically, appellant denied that (1) Christopher was not allowed to play outside; (2) she made the children eat mustard, pepper, and vinegar sandwiches; (3) she put shaving cream in the children's mouths; and (4) she did not allow Christopher to eat when he was hungry. *Id.* at 88–90, 95. While presenting her defense, appellant also presented testimony from an intake officer, for the Shuman Center, who was authorized by the court to issue emergency custody authorization for CYS. The officer's testimony concerned the limited scope of the investigation that was undertaken before issuance of an emergency petition to permit removal of Christopher and the other two children. In particular, she testified that the CYS worker called and repeated allegations to her that the officer had heard in a phone call. On the basis of these allegations, the authorization was granted; the CYS caseworker had not made any attempt to verify the allegations or to talk with either the children or appellant. *Id.* at 72–76. In addition, appellant re-called the CYS caseworker to show that one of the allegations conveyed to her in the phone call, that Christopher was losing weight, proved to be untrue. *Id.* at 80–83.

Viewing the case under the aforementioned standards, we conclude that the lower court's adjudication of dependency cannot stand. As the above summary of the testimony reflects, the hearing below focused entirely on the question of whether the specific acts of abuse had occurred. The evidence on this issue was sharply contested, and, in mak-

ing its determination, the court had to rely largely on the hearsay testimony of the CYS caseworker and Dr. Rosenblum for the substance of the abusive acts, and a general assessment of Christopher's credibility. The difficulty in the case is that, even accepting that incidents of abuse had occurred in the past, there was no "comprehensive inquiry" into whether proper parental care was immediately available or what sort of care Christopher would receive in the future if returned to appellant. Indeed, there was no testimony directly addressing appellant's abilities and shortcomings as a parent, nor was there testimony about whether the alleged acts were isolated incidents or were likely to recur. Also absent from the testimony is any professional evaluation of appellant's parenting abilities and Christopher's prospects with her. In this regard we also note that there was no testimony that would have explained why appellant could be considered capable of rendering proper parental care and control to her younger children, while at the same time, *incapable* of rendering such care to Christopher. Instead, the order appears to have been based solely on the seriousness of appellant's past conduct. While we do not wish to downplay the inappropriateness of that conduct, we also are not prepared to hold—at least absent some testimony on appellant's parenting abilities—that the isolated incidents as set forth in the record are of such a nature as to warrant the conclusion that appellant would be incapable of rendering proper care in the future. *See In Interest of H.B.*, 293 Pa.Super. 109, 115–16, 437 A.2d 1229, 1233 (1981) (evidence suggested mother had neglected her child's physical and emotional well-being insufficient to show appellant incapable of proper care in future). *Cf. In the Interest of Black*, 273 Pa.Super. 536, 417 A.2d 1178 (1980) (evidence that parents' two previous children had died because of improper care and precautions taken by parents warranted finding of dependency of newborn infant).

For the foregoing reasons, we vacate the order of the lower court and remand for further proceedings at which the parties may present evidence regarding appellant's

present capacity to provide the necessary care and control for Christopher.

Order vacated and case remanded. Jurisdiction relinquished.