J-S29003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 535 WDA 2025 |

Appeal from the Dispositional Order Entered April 2, 2025
In the Court of Common Pleas of Allegheny County Family Court at
No(s): CP-02-DP-0000001-2025

BEFORE:  NICHOLS, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY NICHOLS, J.:            **FILED:  November 18, 2025**

R.S. (Father) appeals[1] the order adjudicating his minor child, B.S. (Child), born in December of 2024, dependent, committing Child to care of Allegheny County Office of Children, Youth and Families (CYF), and placing Child in kinship care.  Father challenges the trial court's evidentiary rulings and argues that CYF failed to present clear and convincing evidence that Child lacked proper parental care and that removal from the home was clearly necessary.  We affirm in part, vacate in part, and remand for further proceedings.

The trial court summarized the factual history as follows:

[Child] was born December **, 2024.  [On January 2, 2025, the trial court granted CYF's petition for emergency custody

---

[1] Mother did not file a notice of appeal and is not a party to this appeal. Nevertheless, Mother filed a letter on July 15, 2025 stating that she joins Father's brief.

authorization order for Child.] He was originally placed in a Bair Foundation foster home. A shelter hearing was held on January 6, 2025. This court ordered at that hearing that [Child] be moved to [] Maternal Grandparents['] home . . . . Parents . . . were ordered to have liberal supervised visitation informally arranged and supervised by Maternal Grandparents. [The trial court also ordered that CYF refer Parents for "in-home services." Shelter Care Order, 1/7/25, at 2.[2]]

\* \* \*

Father pled guilty to the felony crime of endangering the welfare of children [(EWOC)] and received a sentence of 5 years['] probation. Mother pled guilty to the misdemeanor crime of [EWOC] and received a sentence of 5 years['] probation. Both Parents stipulated to unexplained injuries sustained by [K.S., Child's older sibling,] in that he sustained a fracture of his left arm, and upon further medical examination it was revealed that he had healing fractures as well. Additionally, the conclusion of the Childline investigation regarding Father was indicated [for child abuse of K.S.] CYF has concerns for both Mother and Father with respect to the safety of the older children, [K.S.] and [A.S.] [(collectively Older Siblings)].

Trial Ct. Op., 5/23/25, at 2-3 (some formatting altered).

We add that CYF filed a dependency petition for Child on January 14, 2025. The trial court held an adjudication hearing on April 2, 2025. CYF caseworker Kellie Pavilonis testified that in 2022, K.S., who was five months old at the time, sustained a fracture in his left arm and had other fractures which were already healing. *See* N.T. Hr'g, 4/2/25, at 83, 94, 108. Parents had not been able to explain the causes of all of K.S.'s injuries. *See id.* at

_____

[2] The trial court's shelter care order is dated January 6, 2025, but was docketed and served on the parties on January 7, 2025. *See* Pa.R.A.P. 108(a)(1) (providing that the date of entry of an order is the day the clerk of court mails or delivers copies of the order to the parties); *see also* Pa.R.Civ.P. 236.

85, 104, 118. As of the date of the adjudication hearing, Parents had not completed their court-ordered goals in the dependency matters for Older Siblings. *See id.* at 83-84, 88-89, 98-99, 118. Parents had completed about 200 hours of coached visitation with Older Siblings and there were no concerns during the coached visitations sessions. *See id.* at 91.

Further, Ms. Pavilonis also testified that at the time of Child's birth, CYF had not received reports that Child had been abused, was in imminent danger of being abused, or had been neglected. *See id.* at 95, 117-18. Further, the hospital staff did not have any concerns about Parents' ability to care for Child. *See id.* at 96. Ms. Pavilonis testified that CYF sought the removal of Child from Parents' care because CYF was concerned about Child's safety in light of the injuries sustained by K.S., Child's older sibling, and Parents' failure to complete their court-ordered goals in the dependency matters for Older Siblings. *See id.* at 85, 116-17. Lastly, she explained that CYF was supposed to refer Parents to "in-home services," but she had not made the referral as of the time of the adjudication hearing. *See id.* at 89.

Tiffany Mazary, a visitation coach at the Children's Institute, testified that she has worked with Parents since September of 2024. *See id.* at 72. Ms. Mazary has supervised Parents' visitation with K.S. and A.S. and she has no concerns about Parents' interactions with K.S. and A.S. *See id.* at 73, 77. She explained that Parents have provided appropriate care and discipline to

K.S. and A.S. *See id.* 73-74. Further, she testified that K.S. and A.S. have

a loving bond with Parents. *See id.* at 74.[3]

Father raises four issues on appeal, which we have reordered as follows:

1. Did the trial court abuse its discretion when it permitted the []CYF caseworker to testify to inadmissible hearsay regarding the facts, medical records, and expert opinions according to which the older sibling came into []CYF custody approximately three years earlier?

2. Did the trial court abuse its discretion when it accepted and credited []CYF's "prognostic evidence" where the legally competent evidence of record proved that the parents have had hundreds of hours of visits supervised by []CYF-contracted service providers, during that time not a single service provider expressed any safety concerns for the children while in the parents' custody, the parents have displayed appropriate parenting skills, their home is safe and appropriate, and there is a strong and loving bond between the parents and children?

3. Did the trial court abuse its discretion when it adjudicated [Child] dependent where []CYF failed to prove by clear and convincing evidence that [Child] was without proper parental care or control and that such care and control were not immediately available?

4. Did the trial court abuse its discretion when it placed [Child] out of the home where []CYF failed to prove by clear and convincing evidence that separating [Child] from his parents was clearly necessary?

Father's Brief at 7-8.[4]

---

[3] Ms. Mazary testified during a permanency review hearing for K.S. and A.S. *See* N.T. Hr'g, 4/2/25, at 5, 72-77, 81. Father moved to incorporate her testimony into the record for Child's adjudication hearing, which the trial court granted. *See id.* at 119.

[4] We note that Father includes argument that CYF violated the January 2, 2025 emergency custody authorization order by placing Child in foster care instead
*(Footnote Continued Next Page)*

**Hearsay**

In his first issue, Father argues that the trial court erred by admitting hearsay statements regarding the dependency matters involving Father's two older children. *See id.* at 55-64. Specifically, Father claims that Ms. Pavilonis's testimony about CYF's concerns about Older Siblings at the time of Child's birth, the source of CYF's goals for Parents in the dependency matters for Older Siblings, and K.S.'s injuries were inadmissible hearsay. *Id.* at 57-60. Father also contends that Ms. Pavilonis improperly testified regarding the "institutional opinions and knowledge of" CYF. *Id.* at 62-63. Lastly, Father argues that questions regarding CYF's concerns regarding Father's anger management treatment was "vague and meaningless" and "is the type of question that the Rules of Evidence prohibit." *Id.* at 63 (some formatting altered).

---

of with relatives in the statement of the case portion of his brief. *See* Father's Brief at 10-11. Father also insinuates that Jane Myhers, Esq., Child's guardian *ad litem* (GAL), did not advocate for Child's best interests. *See id.* at 12 (stating that at the April 2, 2025 hearing, "B.S. was nominally represented by" GAL). These issues are waived because they were not included in Father's statement of questions involved. *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) (explaining that this Court will not consider "any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved" (citation omitted)); *see also* Pa.R.A.P. 2116(a). These issues are also waived because Father only raised them in his statement of the case and not in the argument portion of his brief. *See* Pa.R.A.P. 2117(b) (stating that "[t]he statement of the case **shall not contain any argument**. It is the responsibility of appellant to present in the statement of the case a **balanced presentation of the history of the proceedings** and the respective contentions of the parties" (emphases added)).

GAL responds that Ms. Pavilonis's testimony was not hearsay because she did not testify about out-of-court statements for the truth of the matter asserted in those statements. GAL's Brief at 18-19. CYF did not address Father's arguments regarding hearsay in its brief.

It is well settled that "the decision to admit or exclude evidence is within the sound discretion of the [trial] court." *In re A.J.R.-H.*, 188 A.3d 1157, 1166-67 (Pa. 2018) (citation omitted). "A reviewing court will not disturb these rulings absent an abuse of discretion. Discretion is abused if, *inter alia*, the [trial] court overrides or misapplies the law." *Id.* at 1167 (citations omitted).

Hearsay is defined as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). "Hearsay is not admissible except as provided by [the Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. Rules 803 through 804 provide exceptions to the rule against hearsay. *See* Pa.R.E. 803, 803.1, 804.

Further, the failure to include an alternative ground in an objection to the admissibility of evidence waives that alternative ground for appeal. *See Brown v. Halpern*, 202 A.3d 687, 708 (Pa. Super. 2019) (concluding that the when the defendants only objected to the plaintiff's testimony as hearsay, the defendants waived their argument that the testimony was not relevant on appeal); *Commonwealth v. Lopez*, 57 A.3d 74, 81-82 (Pa. Super. 2012)

(stating that "[a] party complaining, on appeal, of the admission of evidence in the court below will be confined to the specific objection there made. If counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal" (citations omitted)); Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

The trial court did not address Father's hearsay claims in its Rule 1925(a) opinion.

Based on our review of the record, we discern no abuse of discretion by the trial court. *See **A.J.R.-H.***, 188 A.3d at 1166-67. Specifically, Ms. Pavilonis was asked about the concerns CYF had about Older Siblings at the time of Child's birth, the source of CYF's goals for Parents in the dependency matters for Older Siblings, and K.S.'s injuries. *See* N.T. Hr'g, 4/2/25, at 82-84, 93, 107-08. None of this testimony constitutes hearsay because Ms. Pavilonis was not asked nor did she testify about the out-of-court statements of others. *See* Pa.R.E. 801(c). To the extent that Father is arguing that Ms. Pavilonis testified about facts outside of her personal knowledge or that any of questions posed to her were too vague, those claims are waived because Father did not object to any testimony on those grounds. *See **Brown***, 202 A.3d at 708; ***Lopez***, 57 A.3d at 81-82; Pa.R.A.P. 302(a). Accordingly, we conclude that Father is not entitled to relief on this claim.

## Prognostic Evidence and Adjudication of Dependency

Father's next two issues are related; therefore, we address them together. Father argues that the trial court should not have considered the injuries of K.S., one of Child's older siblings, and the ensuing dependency proceedings for both Older Siblings as prognostic evidence that Child lacked proper parental care or control because ***In re DeSavage***, 360 A.2d 237 (Pa. Super. 1976), the first decision to discuss prognostic evidence, did so in *dicta*. Father's Brief at 43-45. Specifically, Father contends that the ***DeSavage*** Court declined to prohibit prognostic evidence but also questioned whether the facts in that case involved prognostic evidence. ***Id.*** at 43-44. Father claims that the repetition of the ***DeSavage*** *dicta* when it was not controlling to the disposition of later cases did not transform that *dicta* into binding precedent. ***Id.*** at 43-45 (citing, *inter alia*, ***Commonwealth v. Romero***, 183 A.3d 364, 401 n.18 (Pa. 2018) (plurality)).

Alternatively, Father claims that if the trial court can rely on prognostic evidence, the evidence presented at the adjudication hearing did not establish that Child lacks proper parental care or control. ***Id.*** at 22-29, 34-36, 46-55. Specifically, Father argues that the trial court relied on the injuries that K.S. had sustained in May of 2022 and this was not predictive of Father's future conduct. ***Id.*** at 49, 52-53. Father contends that the testimony of Ms. Mazary indicates that Parents have interacted appropriately with Older Siblings during supervised visitation and this evidence was "more predictive" of Parents' future conduct towards Child than K.S.'s 2022 injuries. ***Id.*** at 26-29, 53-55.

Father also claims that CYF failed to establish that Parents failed to meet their court-ordered goals established at the January 6, 2025 shelter care hearing. *Id.* at 36-37 (citing, *inter alia*, N.T. Hr'g, 4/2/25, at 49, 114).

Our standard of review for dependency cases is to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re E.B.*, 83 A.3d 426, 430 (Pa. Super. 2013). We are not, however, required to accept the trial court's inferences or conclusions of law. *Id.* We therefore review for an abuse of discretion. *Id.*; *see also In re M.T.*, 101 A.3d 1163, 1177 (Pa. Super. 2014) (*en banc*) (explaining that in dependency matters "[e]ven if an appellate court would have made a different conclusion based on the cold record, we are not in a position to reweigh the evidence and the credibility determinations of the trial court" (citation omitted)). Further, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

Dependency matters are governed by the Juvenile Act, 42 Pa.C.S. §§ 6301-6375, which defines a "Dependent child," in relevant part, as:

A child who:

> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

- 9 -

42 Pa.C.S. § 6302.

> This Court has explained:
>
> The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: **whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.**
>
> The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency.

*In re G., T.*, 845 A.2d 870, 872 (Pa. Super. 2004) (citations omitted, some formatting altered, and emphasis added); *see also E.B.*, 83 A.3d at 431 (same); *In re R.P.*, 957 A.2d 1205, 1220 (Pa. Super. 2008) (explaining that in child dependency proceedings, the health and safety of the child "supersede[s] all other considerations").

Our Supreme Court has stated that *dicta* is "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." *Klar v. Dairy Farmers of Am., Inc.*, 300 A.3d 361, 383 n.104 (Pa. 2023) (citation and quotation marks omitted). Further, "mere repetition of *dicta* in later decisions, where it does not control the disposition of a litigated issue, does not transform that *dicta* into controlling law." *Romero*, 183 A.3d at 401 n.18 (plurality).

This Court has explained that "prognostic evidence, particularly in cases involving infants, is relevant and admissible and so powerful it can itself

sustain a finding of dependency." *In re K.B.*, 331 A.3d 50, 59 (Pa. Super. 2025) (*per curiam*) (citing *E.B.*, 83 A.3d at 433; *DeSavage*, 360 A.2d at 241-42); *see also In re R.W.J.*, 826 A.2d 10, 14-15 (Pa. Super. 2003). This is because "a rule prohibiting a court from considering prognostic evidence and compelling the court to place the child with natural parents to determine if they can render proper care 'ignores the possibility **that if the "experiment" proves unsuccessful, the consequences to the child could be seriously detrimental or even fatal.**'" *K.B.*, 331 A.3d at 57 (quoting *DeSavage*, 360 A.2d at 242) (emphasis in original).

In *K.B.*, the Philadelphia Department of Human Services (DHS) obtained an order of protective custody of the child shortly after birth. *Id.* at 53-54. When the adjudication hearing began, the child was less than two months old. *See id.* at 54, 59. DHS attempted to present prognostic evidence, including that the mother had lost custody of her three other children and that her parental rights to two of her other children had been terminated, but the trial court refused to admit much of this evidence and remarked that the mother's "other children are irrelevant." *Id.* at 54-55 (citation omitted). The trial court ultimately discharged the dependency petition and DHS appealed. *Id.* at 55. This Court held that the trial court abused its discretion by excluding relevant prognostic evidence, which, among other things, included evidence related to the mother's history of neglecting her other children as well as the adjudications of dependency and subsequent termination of mother's parental rights to two of her children. *See id.* at 60. For this, and other reasons, the

- 11 -

***K.B.*** Court reversed the trial court's order discharging the dependency petition and remanded for further proceedings. ***See id.*** at 62-63.

This Court has affirmed adjudications of dependency based primarily or solely on prognostic evidence. ***See, e.g.***, ***E.B.***, 83 A.3d at 433-34; ***R.W.J.***, 826 A.2d at 15. Further, a criminal conviction or pending criminal charges related to physical injuries to a child's older sibling or siblings is prognostic evidence that can support an adjudication of dependency. ***See, e.g.***, ***E.B.***, 83 A.3d at 430, 433-34 (the father had pending criminal charges, including aggravated assault and EWOC, related to the fractured clavicle of another child) ; ***R.W.J.***, 826 A.2d at 13, 15 (the father had pled guilty to involuntary manslaughter for a ten-week-old child).

However, "a child should not be found to be dependent merely because a sibling has been adjudicated dependent." ***G., T.***, 845 A.2d at 872 (citation omitted).

In assessing whether a child is presently without proper parental care and control and, if so, whether such care and control are immediately available, "the [juvenile] court **must** consider 'not only what sort of parental care the child received in the past, but also what sort of parental care the child will receive if custody is given to the parents.'" ***In re Swope,*** 571 A.2d 470, 472 (Pa. Super. 1990) (citation omitted and emphasis in original). Noting that evidence of "whether the specific acts of abuse had occurred [] was sharply contested," that no testimony addressed "what sort of care [child] would receive in the future if returned to [the parent,]" and that the record lacked

sufficient evidence regarding the parent's "abilities and shortcomings as a parent" or "whether [the parent's] alleged acts were isolated incidents or were likely to recur[,]" the **Swope** Court remanded to determine whether the parent "would be incapable of rendering proper parental care **in the future**." **Id.** at 473 (citation omitted and emphasis added); **see also R.W.J.**, 826 A.2d at 15.

> Here, the trial court explained:

> Regarding the issue of whether there was sufficient evidence presented to show whether there is immediately available proper parental care and control regarding [Child], the court heard evidence that Father has pled guilty to the felony crime of [EWOC], and Mother has pled guilty to the misdemeanor crime of [EWOC]. Both Father and Mother have stipulated[5] to the unexplained injuries of an older sibling, [K.S.]. Father has not completed his court ordered goals of obtaining an updated mental health evaluation and an updated anger management evaluation, and Mother has not completed her latest court order[ed] goal for non-offenders.

> For the reasons set forth in this opinion, and with the grounds for this court's order established, it is evident to this court that said order of dependency regarding [Child] should be affirmed.

Trial Ct. Op., 5/23/25, at 3-4 (some formatting altered). The trial court did not address Father's claim that the trial court could not consider prognostic evidence in its Rule 1925(a) opinion.

---

[5] Our review of the record indicates Mother and Father did not stipulate to the unexplained injuries of K.S. at the adjudication hearing. However, Ms. Pavilonis testified that Parents had both pled guilty to charges of EWOC in connection with K.S.'s injuries. **See** N.T. Hr'g, 4/2/25, at 110-11.

Based on our review of the record, we discern no abuse of discretion on the part of the trial court in adjudicating Child dependent. **See E.B.**, 83 A.3d at 430. First, we disagree with Father's claim that **DeSavage**'s holding that a trial court can consider prognostic evidence when adjudicating a child dependent is non-precedential *dicta*. This Court has repeatedly affirmed adjudications of dependency where trial courts relied primarily or solely on prognostic evidence. **See, e.g.**, **E.B.**, 83 A.3d at 433-34; **R.W.J.**, 826 A.2d at 15. Therefore, this is not a situation where courts have merely repeated *dicta* that was not dispositive to outcome of the cases before those courts. **Cf. Romero**, 183 A.3d at 401 n.18.[6]

Here, Ms. Pavilonis testified regarding the relevant facts of Older Siblings' dependency matters and Parents' criminal convictions. **See** N.T. Hr'g, 4/2/25, at 83-85, 88-89, 94, 98-99, 104, 108, 111, 118. As explained previously, a trial court may rely on prognostic evidence alone to adjudicate a child dependent, particularly where the prognostic evidence is a parent has a criminal conviction involving physical injuries to another child. **See, e.g.**, **E.B.**, 83 A.3d at 430, 433-34; **R.W.J.**, 826 A.2d at 13, 15. Therefore, we discern no abuse of discretion with the trial court's conclusions based on prognostic evidence.

---

[6] Further, to the extent that Father argues that CYF's prognostic evidence is inadmissible prior bad acts evidence under Pa.R.E. 404(b), that is claim is waived because Father did not raise it before the trial court. **See Brown**, 202 A.3d at 708; **Lopez**, 57 A.3d at 81-82; Pa.R.A.P. 302(a).

Next, Father's claim that CYF failed to establish that Parents failed to complete the goals ordered at the January 6, 2025 shelter care hearing is belied by the record. Our review of Father's citations to the record indicates that his first citation is to testimony from Older Siblings' permanency review hearing, which was not incorporated into Child's adjudication hearing; therefore, it is irrelevant. **See** Father's Brief at 36 (citing N.T. Hr'g, 4/2/25, at 49). Father's second citation is to GAL's questioning of Ms. Pavilonis in this matter. **See id.** (citing N.T. Hr'g, 4/2/25, at 114). Read in context, GAL's questions and Ms. Pavilonis's answers are not related to any court-ordered goals from the January 6, 2025 shelter care hearing; instead, the testimony concerned Older Siblings' dependency matters and establish that CYF was requesting that the trial court order Parents to order the same goals in this matter. **See** N.T. Hr'g, 4/2/25, at 113-15.

Lastly, Father's argument that Parents' history of supervised visitation with Older Siblings is more "predictive" of whether Child presently lacks proper parental care and control essentially invites this Court to reweigh the evidence, which we may not do. **See M.T.**, 101 A.3d at 1177. As stated above, as an appellate court, we are bound by the trial court's findings of fact so long as they are supported by the record. **See E.B.**, 83 A.3d at 430. For these reasons, we conclude that Father is not entitled to relief on these

claims.[7]

## Removal of Child From the Home

Lastly, Father argues that CYF failed to establish, by clear and convincing evidence, that removal of Child from Parents' home was clearly necessary. Father's Brief at 40-41. Specifically, Father contends that the trial court failed to address whether Child's removal from Parents' care was clearly necessary. *Id.* at 41. Father concludes that "[t]he facts of record prove that [Father] and [Mother] had fully cooperated with the []CYF-contracted service providers and engaged in hundreds of hours of supervised and coached visitation over the course of three years without any concern for [Older

---

[7] We note that Father also argues that CYF failed to meet its burden of production with exhibits such as the orders and dockets from Older Siblings' dependency matters, and consequently the trial court relied on evidence not in the record when it adjudicated Child dependent. **See** Father's Brief at 29-34, 38-40. This issue is waived because it was not raised in nor fairly suggested by Father's statement of questions involved. **See M.Z.T.M.W.**, 163 A.3d at 466.

Even if not waived, we would conclude that Father is not entitled to relief for the reasons stated above. It is well-established that the party who bears the burden of proof may satisfy that burden through testimony alone. **See, e.g.**, **generally Commonwealth v. Crosley**, 180 A.3d 761, 768 (Pa. Super. 2018) (explaining that in a criminal trial, "even the uncorroborated testimony of a single witness may alone be sufficient to convict a defendant" (citation omitted)); **Woy v. Woy**, 663 A.2d 759, 761 (Pa. Super. 1995) (stating that "[t]he testimony of a child's mother, if credible, may alone be sufficient to rebut the presumption" of paternity by clear and convincing evidence)). Therefore, the trial court, as the finder of fact, was free to believe all, part, or none of the testimony and to make all credibility determinations. **See M.G. & J.G.**, 855 A.2d at 73-74.

Siblings'] safety or [] Parents' parenting skills." *Id.* at 41 (some formatting altered).

After finding a child dependent, the juvenile court may enter an order of disposition that is "best suited to the safety, protection and physical, mental, and moral welfare of the child[.]" 42 Pa.C.S. § 6351(a). This includes "allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state." *In re N.S.*, 237 A.3d 546, 550 (Pa. Super. 2020) (citations omitted).

Section 6351(b) states, in relevant part:

> **(b) Required preplacement findings.**—Prior to entering any order of disposition under subsection (a) that would remove a dependent child from his home, the court shall enter findings on the record or in the order of court as follows:
>
> > (1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and
> >
> > (2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or
> >
> > (3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances . . . .

42 Pa.C.S. § 6351(b)(1)-(3); *see also* 42 Pa.C.S. § 6301(b)(3) (stating that the Juvenile Act shall be interpreted to effectuate the separation of a child from the parents "only when necessary for [the child's] welfare, safety or health or in the interests of public safety").

This Court has explained:

even after a child has been adjudicated dependent, a court may not separate that child from his or her parent unless it finds that the separation is clearly necessary. Such necessity is implicated where the welfare of the child demands that he or she be taken from his or her parents' custody. Clear necessity is established when the court determines that alternatives are not feasible.

*N.S.*, 237 A.3d at 551 (citations omitted and formatting altered).

Further, this Court has recently reiterated that

[in a dependency proceeding,] a hearing judge's inquiry should be comprehensive and searching, and his decision supported by a full discussion of the evidence. If the hearing judge does not comply with these requirements, on appeal the case will be remanded for further proceedings. This is so because . . . [the scope of our review] is quite broad and, while we cannot nullify the fact-finding function of the hearing judge, we are not bound by a finding which has no competent evidence to support it.

*In re J.R.*, 333 A.3d 446, 452-53 (Pa. Super. 2025) (*per curiam*) (citation omitted); *see also N.S.*, 237 A.3d at 552 (holding that "[n]either the 10-page transcript of the permanency review hearing, nor the trial court's 3-page opinion, exhibits the comprehensive inquiry required in a removal case, or explains why removal of [the child] from [the] mother's custody promotes [the child's] best interests or welfare" (citations omitted and some formatting altered)).

In its adjudication order, the trial court stated: "The court finds that based upon the findings of abuse, neglect[,] or dependency of . . . Child, it is in the best interest of [] Child to be removed from the home of" Mother and

Father. Dispositional Order, 4/2/25, at 1 (some formatting altered). The trial court also explained:

> Further, the court hereby finds that to allow [] Child to remain in the home would be contrary to [] Child's welfare, and that preventative services were not offered due to the necessity for emergency placement. The lack of services was reasonable under the circumstances. This level of effort was reasonable due to the emergency nature of the situation, safety considerations, and circumstances of the family.

*Id.* at 2 (some formatting altered).

Based on our review of the record, we are constrained to conclude that the trial court abused its discretion by ordering that Child removed from Parents' care. *See E.B.*, 83 A.3d at 430. As stated above, CYF presented prognostic evidence that K.S. had sustained a fracture in his left arm and several fractures when he was five months old. *See* N.T. Hr'g, 4/2/25, at 83, 94, 108. Further, Parents each pled guilty to a charge of EWOC in connection with this fracture. *See id.* at 111. Ms. Pavilonis further testified that, as a result of Parents' convictions related to K.S., CYF was unable to assure Child's safety in Parents' care. *See id.* at 85, 116-17. However, the trial court failed to discuss any evidence establishing that alternatives to removal are not feasible in either its adjudication and disposition order or in its Rule 1925(a) opinion. *See N.S.*, 237 A.3d at 551. The trial court also failed to discuss any evidence to support its conclusion that the lack of preventative services[8] to

_____

[8] We note that Ms. Pavilonis testified that the trial court ordered CYF to refer Parents for "in-home services" in the January 7, 2025 shelter care order, but
*(Footnote Continued Next Page)*

avoid removal was reasonable under the circumstances. **See J.R.**, 333 A.3d at 452; 42 Pa.C.S. § 6351(b)(3).

For these reasons, we are constrained to conclude that the trial court failed to conduct a "comprehensive and searching" inquiry to support its conclusion that the disposition of removing Child from Parents' care was clearly necessary.[9] **See J.R.**, 333 A.3d at 452; **N.S.**, 237 A.3d at 552. Accordingly, we affirm the portion of the trial court's April 2, 2025 dispositional

this had not occurred in the nearly three months between that order and the April 2, 2025 adjudication hearing. **See** N.T. Hr'g, 4/2/25, at 89. Further, it is unclear from the record whether these "in-home services" would constitute "preventive services" under 42 Pa.C.S. § 6351(b).

[9] We acknowledge that at the January 6, 2025 shelter care hearing, the hearing officer determined that Child be removed from Parents' care and placed with Maternal Grandparents. **See** Recommendation for Shelter Care, 1/6/25, at 2. This Court recently stated that "the salient issue surrounding both the shelter care order and the subsequent adjudication of dependency is [the child's] best interests and whether those interests were served by [the child's] removal from his parents' home." **In re M.G.**, 331 A.3d 703, 713 (Pa. Super. 2025) (citation omitted). The **M.G.** Court also explained that "[t]he shelter care hearing is intended to be an 'informal hearing,' and its main purpose is to determine where the child should be placed pending a formal adjudicatory hearing." **Id.** at 712 (citing, inter alia, 42 Pa.C.S. § 6332(a)). Therefore, this Court held that a "shelter care hearing does not comprehensively address the merits of the case. Instead, the formal adjudicatory hearing addresses the merits[.]" **Id.** (citations and footnote omitted); **see also In re A.E.**, 722 A.2d 213, 216 (Pa. Super. 1998) (stating that a shelter care hearing is "an informal attempt to determine whether shelter care continues to be appropriate pending a dependency hearing. It is not a substitute for a [disposition of] custody proceeding"). For these reasons, the shelter care hearing officer's finding that removal of Child from Parents' care was in Child's best interests does not affect our conclusion that a remand is necessary here because the trial court has failed to conduct a "comprehensive and searching" inquiry and to include "a full discussion of the evidence" supporting its decision. **See J.R.**, 333 A.3d at 452; **see also M.G.**, 331 A.3d at 712.

order that adjudicated Child dependent, vacate the portion of the trial court's dispositional order removing Child from Parents' home and placing Child with Maternal Grandparents,[10] and remand for a dispositional hearing consistent with this memorandum. On remand, the trial court shall make findings regarding the reasonableness of DHS's decision to not offer services to Parents to prevent or eliminate the need for removal of Child from Parents' care. ***See J.R.***, 333 A.3d at 452; 42 Pa.C.S. § 6351(b)(3). Further, the trial court shall make findings regarding the feasibility of alternatives to removing Child from Parents' care and whether removal of Child is clearly necessary to protect Child's welfare, safety, and/or health. ***See N.S.***, 237 A.3d at 551; 42 Pa.C.S. § 6351(b)(1). After making these findings, the trial court shall enter a dispositional order consistent with its findings. ***See*** 42 Pa.C.S. § 6351(a), (b).

We also note that, notwithstanding our vacatur of the portion of the trial court's April 2, 2025 dispositional order that removes Child from Parents' care and places Child with Maternal Grandparents, we do not disturb the trial court's January 7, 2025 shelter order placing Child with Maternal Grandparents. This will maintain the status quo while the trial court addresses

---

[10] We note that in the January 7, 2025 shelter care order, the trial court placed Child with Maternal Grandparents, but in the April 2, 2025 dispositional order, the trial court only mentions Maternal Grandmother when discussing Child's placement. ***Compare*** Shelter Care Order, 1/7/25, at 2 ***with*** Dispositional Order, 4/2/25, at 2-3.

- 21 -

whether removing Child from Parents' care is clearly necessary under 42 Pa.C.S. § 6351(b).[11]

Order affirmed in part and vacated in part. GAL's application for post-submission communication granted. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  11/18/2025

---

[11] We acknowledge that our disposition has the effect of delaying permanency regarding Child's disposition. **See generally In re N.C.**, 909 A.2d 818, 823 (Pa. Super. 2006) (explaining that the policy underlying the Juvenile Act "is to prevent children from languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment" (citations omitted)). Nevertheless, we are constrained to do so where the trial court has failed to conduct the comprehensive inquiry required when removing a child from his or her parents' care. **See J.R.**, 333 A.3d at 452; **see also N.S.**, 237 A.3d at 552-53.